By the Court. Campbell, J.
It was said in Myers v. Malcocol/m, which was an action to recover damages for injury to the person, that evidence of the wealth of the defendant was inadmissible, because the plaintiff was entitled in that case to recover the actual damages he had sustained without regard to the ability of the defendant to pay them, and such is the general rule in cases free from malice or wilful negligence. But, in relation to the plaintiff, the case is widely different. As to him, it is often necessary to inquire into his condition in life, his habits, pursuits, and necessities, in order that the jury may determine what actual damage he has sustained. The loss of a limb might produce equal pain to two men, but the actual damage which that loss would occasion, when we are called upon to estimate that damage in dollars and cents, would depend very materially upon the pursuits and condition in life of the party claiming to recover such damage. In Foot v. Tracy, 1 John 53, Kent, J., says, “The jury have, and must inevitably have, a very large and liberal discretion in apportioning the damages to the rank, condition, and character of the plaintiff, and they must have evidence touching that condition and character, so as to have some guide to that discretion.” (See Lincoln v. Saratoga & S. R. R. Co., 23 Wend. 425). In estimating that damage also, it is very manifest that a most important inquiry must be, whether the injury which the plaintiff has sustained is *240 of a temporary or of a permanent character. Where successive actions may be brought for a continuous wrong, as in the case of a continued trespass upon land, the damages in each suit are very properly limited to those sustained by the plaintiff at its commencement, but for an injury to the person, resulting from a single act, a single action only can be brought, and it would therefore be manifestly unjust not to take into consideration upon the trial the nature and extent of the injury in all its consequences, since, by not so doing, the plaintiff in many cases would be deprived of the larger portion of the compensation he might justly claim, and the damages given be wholly disproportioned to the injury sustained. The ruling of the judge on the trial, admitting evidence on both these points, we therefore think was correct. Another question put to one of the witnesses, inquiring what had been the condition of the plaintiff as to health since the injury, was objected to, and application was made to strike out the answer of the witness, which answer was, that the plaintiff has since invariably complained, and which application to stride out was refused by the judge. It was, perhaps, not very material, and was not much pressed upon the argument. The complaint of pain and suffering connected with the appearance of the injured party, form the means of judging as to his physical condition. The witness to whom this question was addressed had attended on the plaintiff as a friend during the period immediately following the injury, and had aided in lifting him in and out of bed, and saw him frequently after'he was able to leave his house, and had therefore the best means - of learning whether such complaint was real. We think it was proper evidence for the jury under the circumstances. The judge charged the jury that, as a general rule, common carriers transporting passengers for hire are liable for damage to the persons carried, unless the same resulted from inevitable force or inevitable accident, but in this case, he added, that the sole question was whether the accident was justly imputable to the negligence of the driver. It was contended by the defendant’s counsel that there is a wide difference between the liability of common carriers of merchandise and of carriers engaged in the transportation of passengers, that while, by the common law, the rule, originating in motives of public policy, was that the *241 former were rendered liable for loss, except occasioned by the act of God or the king’s enemies, it was much less stringent in reference to the latter class of carriers, and they are not liable if they use ordinary care and prudence in the management of their vehicles. In Ingolls v. Bills and others, 9 Metcalf 1, the Supreme Court'of Massachusetts examined with much care, and commented on many of the leading cases, and they say in conelusion: “ The result to which we have arrived, from the examination of the case before us, is this—that carriers of passengers for hire are bound to use the utmost care and diligence in the providing of safe, sufficient, and suitable coaches, harness, horses, and coachmen, in order to prevent those injuries which human care and foresight can guard against.” Having thus provided the means of transport, they are in like manner bound to use the utmost care and diligence in the managing, directing, and using those means, so that, as far as human care and foresight can go, they may guard against injury., Having done all that human-care and foresight can do, and loss happening, they are not liable. ' Pure accidents will excuse them. They are not answerable, at all events. Human life is too valuable to be required abso-1 lutely at the hands of those who have done all that the utmost I care and foresight can do for its protection. But the magnitude of its value, at the same time, requires of carriers of passengers such extreme care and foresight. The charge of the judge that the law exacted from common carriers of passengers extraordinary care and diligence, and that they are liable, unless the injury arises from force or pure accident, was entirely correct. W e do not deem it necessary to enter upon a review of the cases, but we think they will be found to support this view. See Christie v. Griggs, 2 Campbell 79; Aston v. Heeren, 2 Esp. R. 533; and Ingolls v. Bills, 9 Metcalf 1, and cases there cited.
At the present period, when the lives of so many hundreds of people are intrusted to the carriers of passengers by steamboats j and railroads, and when accidents and disasters are so lament- / ably frequent, it is no time to relax a rule so salutary and so f necessary for the public safety.
There was no evidence tending to show that the plaintiff was *242 guilty of negligence. He was on the top of the stage with many others by the consent of the driver, who collected his fare from them; and, when the owners of a stage agree to transport passengers upon the top, they have assuredly no right to impute negligence to a passenger thus seated. It appears, also, that there were seats for passengers on the top of the stage. The negligence of the plaintiff, if there had been any, in order to excuse the defendant, must have been such that it directly concurred in producing the injury. It can hardly he pretended that it did so. The comments of the judge upon the evidence seem to have been fairly warranted. The testimony of the driver was contradicted in material points by that of two or three other disinterested witnesses. The credit to he given to him was, however, left to the jury, and the whole case was, we think, fairly submitted. The other objections that were taken on the trial, and partly urged on the hearing before us, have seemed to all of us so evidently groundless as not to require a special notice. The judge, at the close of the testimony, decided that the plaintiff could not recover any damage for the death of the child. The verdict of the jury was for §625, and considering the plaintiff’s injury was not large. We are unable to see any reason for a new trial.
The judgment for the plaintiff is therefore affirmed with costs.