By the Court,
Eobebtsoh, Oh. J.
As the pleadings formed no part of the printed case before üs, we have no judicial knowledge of the nature of the action, except from the evidence. A trial, however, having taken place, and no objection having been made for a variance between the cause of action set out in the complaint and that, if any, given in evidence, we are bound to inquire whether evidence tending to establish any cause of action was offered. Such cause of action is *209 claimed, to consist of the homicide of the plaintiff’s husband, by the negligence of the servants of the defendants.
It was suggested, on the argument, that greater care was required of the defendants, because the decedent was on a public street when killed ; that, however, is disproved by the evidence. (The court, after examining the testimony, proceeded.) It must, therefore, be assumed that the accident took place on the defendants’ own premises. I do not see how the failure to enclose such depot of the defendants, if it were proved, could affect their liability. The 44th section of the general railroad act, (Laws of 1850, p. 233,) requiring railway companies to fence" in their road, is inapplicable to such a case. The decedent was not killed in consequence of the want of such fence. The same rule is not to be applied to him as to dumb animals, who stray on uninclosed tracks, and get killed. The remarks of Judge Denio, in Bissell v. N. Y. Cent. R. R. Co., (25 N. Y. Rep. 460,) as to the comparative value of human and bestial life which are appropriate in regard to care in transporting the bodies animated by them, become wholly inapplicable to destroying the life of a person not a passenger.
The counsel for the plaintiff also contended that the decedent was not trespassing on the premises of the defendants, and that even if he were, the latter were responsible for employing dangerous instruments without proper care or warning. It does not appear for what purpose the decedent was on the defendants’ premises at the time he met his death ; he was not moving, and not apparently engaged in any operation requiring him to be on those premises. He may, therefore, have been a trespasser, although only technically. In such a case, the owner of the premises may, perhaps, be liable for injury done by a secret contrivance, willfully prepared, (Bird v. Holbrook, 4 Bingh. 628,) of which no notice was given, although Chief Baron Pollock intimates very strongly, in Degg v. Midland Railway Co., (1 Hurlst. & N. 773,) that under such circumstances he would not be responsible for mere negligence, instancing the leaving a rotten cover on an old well, and the same principle se.ems to have governed the decision in the case *210 of Southcote v. Stanley, in the same volume, (p. 247.) I do not see, however, any way in which the present case can be distinguished in principle from that just cited, (Degg, admx. v. Midland Railway Co., ubi sup.) There the defendants, a railway company, were sued for causing, by the negligence of their servants, the death of the plaintiff’s husband, of whose estate she had been appointed administratrix, and the importance of the principles involved in that case fully justify an extended examination of it.
The deceased had gone upon the premises of the defendants, in that case, voluntarily, to assist some of their servants, in turning a turntable for the purpose of shifting the position of some trucks ; some trucks were upon the turntable, and the deceased had his head close to a buffer of one of them. While there, a steam engine came intp a side track for the purpose of pushing in (“ shunting”) some other trucks. These were driven against some stationary trucks near the turntable, which they forced against those upon it, so that the latter were shoved off so as to catch the decedent’s head between the buffer and a shed, previously some distance apart, so as to cause his death.
The declaration was, in substance, for so negligently and without warning hy' the servants, propelling a truck against one which the decedent was assisting to remove from one place to another on their premises, as to cause his death. A plea of not guilty, merely, was first put in, the issue made by which was tried, and after such trial a second plea was added, which set up that the decedent was voluntarily assisting the servants of the defendants ; that such servants were persons of competent skill, capable of moving and propelling trucks without occasioning injury to the decedent, and that any negligence of theirs was not authorized by the defendants. Eeplications to both pleas, as well as a demurrer to such second plea, were put in.
On the second trial of the issues of fact, the before recited facts were established. Some evidence was also offered as to negligence of the engine driver in not sounding the whistle, *211 and the signal man in omitting to stop in time, but it does not appear to have affected the judgment of the court. The presiding judge left the question of fact of negligence of the defendants’ servants to the jury, and directed them, if they found such negligence, to find for the plaintiff on the first issue, and he also left to them the skill and competency of the defendants’ servants in “ shunting” trucks on and off the depot, as a question of fact, and directed them, if they found them competent and skillful, to find a verdict for the defendants on the. second issue. Leave was given to the defendants to move to enter a verdict in their favor on the first issue.
On the argument of such motion, the court directed the verdict on the first issue to be entered for the defendants upon the ground that they were not chargeable with the negligence of ' their servants. Baron Bramwell in delivering the opinion of the court, investigated the claims of the plaintiff to indemnity, in case her husband had been a servant of the defendants,- and held both that they would not have been liable if he had been one, and that he was not one. He then proceeded to discuss the question of their liability for his death by the negligence of their servants, considering him in the light of a stranger. He terms him a wrongdoer; but by that undoubtedly he meant merely a person on the premises of the defendant without any request or special license on their part. He certainly was fully as much entitled to indemnity for any injury as the plaintiff’s husband in the present case. The question of trespassing was not thus involved ; so that if the want of a fence or inclosure made an entry upon the premises of the present defendant less a technical trespass, it would not affect the result.
The learned baron in the case just cited admitted that a master might be liable for injury under the same circumstances if it were his personal act, and he knew the deceased to be where he could be injured; but he asked emphatically “on what principle could he be, for the negligence of his servants ?” And further, “ why should a mere wrongdoer (that is a person who had no business to be where he was,) have power to *212 create a responsibility ?” He proceeded to argue that negligence never was “intrinsic or absolute” but always “relative to time, place or person.” He instanced, riding fast in an inclosure, where a person was seen to be near, who might be injured thereby, and urged, that as a master was not liable for the willful act of a servant, he ought not to Be so, where an act of such servant in the discharge of his duty to his master, not wrong in itself was only made so by reasons personal to the servant, such as his disregard of caution, whether willful or not. He added the defendants in that case might, if they had chosen, without wrong to any one, constantly have propelled trucks against each other, even without notice or precaution, and the deceased could not make such acts wrongful “ by coming there himself; ” so that whether he was a wrongdoer or not no action lay by himself or his representative. He was not injured by any general carelessness of the servants of the defendants, but only by an act made one of special carelessness, in consequence of his being there.
The whole of the reasoning in such opinion is fully and equally applicable to the deceased, whose death forms the subject of the present action. There was no special duty or relation between him and the defendants ; no charge of general incompetency on the part of the persons managing the particular cars whose motion caused his death is made. It was only an act of special negligence, if any, in the particular case for which the parties who were guilty of it were alone responsible.
But even if the defendants could be made liable by their servants, by the neglect of the latter, in bringing about the accident out of which this action grew, they could not, if the negligence of the decedent contributed to such result. Whether rightfully or wrongfully, he had placed himself in a position not to be seen by the servants of the defendants in moving their cars, or to have notice of any approach of danger. This at once raises the question, whether he was guilty of negligence in placing himself in that position on that track, when he ought to have known that the defendants were in the habit of moving their cars thereon, or in order to apply the -true test of negli *213 gence to such, act, were the defendants hound, before moving their cars, to examine their premises, and see if any one was upon them in a condition to be injured by their motion ? In other words, on whom did the burden of looking out for, and warning the decedent of the danger rest ? Was it incumbent on the decedent either to ascertain for himself that no train was coming, and take the risk of their arrival, or to warn the defendants of his presence in the way of danger, or on them to keep watch for the presence of persons behind the stationary cars and warn them away ? If the former, the decedent was clearly guilty of negligence ; if the latter, he was not, since he had a right to rely on the performance of their duty by the defendants. The question of negligence thus presented escapes many considerations, which would only tend to create embarrassments. The rule laid down in one English case, (Tuff v. Warman, 15 Com. B. N. S. 573; S. C. 27 Law J. C. F. 322 each,) and, perhaps in others, that the negligence of the party injured does not relieve the party injuring from the consequences of his want of care, if, notwithstanding such negligence, the result might have been avoided by proper care, if it be the law of this state, becomes inapplicable, since there is no evidence that the defendants could have avoided the result, except by discovering, upon investigation, the presence of the decedent within reach of danger. So, too, the very similar principle, if not the same in a different form, that no degree of vigilance on his part could have rescued the decedent from danger, and therefore his negligence was of no consequence, as laid down in Carroll v. New Haven Railroad Co., (1 Duer, 574, and Evansville, &c. Railroad Co. v. Landermilt, (15 Ind. R. 120, and n. p. 123,) if not overruled by other cases, in this state, becomes also inapplicable, since a few steps to the eastward of the decedent’s position would have placed him in safety. Any unusual precaution, or degree of care, rendered necessary by the employment of so tremendous an agent as steam, (Camden and Amboy Railroad Co. v. Burke, 13 Wend. 611; Bissell v. N. Y. Central Railroad Co., 25 N. Y. Rep. 452, per Selden, J.; Status v. Saltenstall, 13 Pet. 193; Philadelphia *214 and Eeading Eailroad Co. v. Derby, 14 How. 474; Caldwell v. Murphy, 1 Duer, 233,) were rendered inapplicable by the fact that the moving power which caused the injury in this case was the strength of animals. Indeed, no new rules or modifications of an old one, adopted latterly, as to negligence on railway tracks or highways, are applicable to a case where injury, caused by negligence, is done upon the premises of the defendants, in the course of the ordinary occupations of their servants, without any peculiar relations between them and the decedent.
There is no evidence as to the failure to sound a bell, as required by the 37th section of the general railroad act, (N. Y. Sess. Laws, 1850, p. 233,) if that provision is applicable to cars propelled by horses, and in cases of negligence the burden of proving it rests on the party charging it. One witness, whose distance from the cars was at least equal to that of the decedent’s, speaks of hearing what he calls the “thunder” of the cars, which ought to have been equally .audible to the decedent, and been sufficient warning of their approach.
If there had been no stationary cars on the track, or the decedent had not gone behind them, so that he had been in a position to have seen those coming, or been seen by the brakeman in time to have avoided any danger, the question would have been easy of solution; for even supposing that the rule laid down in Degg, admix, v. The Midland Railway Company., (ubi supra,) did not exempt the defendants from liability for the negligence of their servants, the question of the contributing negligence of the decedent, or- that of the want of care on the part of the brakeman, would easily have been solved, either as a question of law or fact. But the act of the decedent id placing himself so as to lose the power of foreseeing the danger, without giving notice of his position, creates the difficulty. It renders him beyond all question guilty of negligence, unless it was the duty of the defendants to ascertain that neither he nor any one else was on their premises in a situation to be injured by moving their cars by horses. And this again resolves itself into the correlative question whether a possi *215 tolity, or even probability of injury, to any one who might happen to be behind the stationary cars, by the collision of entering cars, made it incumbent on the defendants, as a duty, to' ascertain that no one was there, before they moved any cars.
This is almost, if not quite a question of first impression ; no case seems to lay down the rule of the degree of vigilance or caution required. It appears to be but just that in the use of instruments of motive power upon one’s own premises, the only caution exacted should be to see that its proper use is not dangerous in itself, and does not extend to taking care of persons whose presence is unknown. Precaution to see that the negligence or unwariness of strangers may not lead them into danger, can certainly form no part of the legal care requisite in such cases. The owner of a cotton mill or a water wheel; is not bound to examine his premises and machinery to see that no one has placed himself within reach of a shaft or bucket- while in motion, in order to escape the charge of negligence, if any such person should be injured. Nor can any one say that such injury was not caused -by the negligence of the party injured, if he place himself where he could not be seen without diligent perquisition, unless he gave notice in some way of his presence. It is perfectly immaterial whether the concealment of the party was designed or not. He had no right, by such concealment, to impose extra labor or vigilance on the owner of the instrument by which he was injured^ beyond what was required if he had not been there.
Judgment must, therefore, be given for the defendants, and the motion for a new trial on the exceptions denied, with costs.