Hamilton agt. Third Avenue R. R. Co.

# N. Y. SUPERIOR COURT.

THOMAS HAMILTON, plaintiff and respondent, agt. THE THIRD
   AVENUE RAILROAD COMPANY, defendant and appellant.

Where a passenger on a horse-railroad car, enters the car near one end of the
   route and pays full through fair, he is entitled to go through without any
   further payment of fare.

If on stopping the car at the depot, with the announcement that it does not go any
   further, and the passenger is directed, with the others, to take another car, which
   is waiting for them, but no transfer ticket is given him, but he is informed by the
   driver of the waiting car that the passengers from the car that has stopped will
   not have to pay any further fare, and, subsequently, the conductor calls on this
   passenger for his fare, who refuses to pay again, as he had paid once, and the
   conductor, per force, removes him from the car for such non-payment, although
   the conductor may be strictly within the rules of his duty to the company, the
   railroad company are liable for damages to the passenger not only for compensa-
   tory, but for exemplary damages.   In this case, $500.

Corporations, as well as natural persons, are liable for exemplary damages.

*General Term, October* 1872.

*Before* FREEDMAN, *and* CURTIS, *JJ.*

THE action was brought to recover damages claimed to
have been sustained by plaintiff in consequence of being
put off one of the defendant's cars for an alleged non-pay-
ment of fare.

Upon the trial plaintiff testified that a few minutes after
12 o'clock, on the 20th day of June, 1868, he took passage
at 90th street and 3rd avenue on defendant's car, No. 75, on
its downward passage, and paid the usual fare of seven
cents; that upon reaching the depot at 65th street the car
turned and went into the depot, and its conductor told the
passengers to change cars; that plaintiff, with the other
passengers, left car No. 75; that defendant's car No. 2 was
waiting to receive them; that being told by the conductor

of car No. 2 that if he came off car No. 75 he was all right, and would not need a transfer ticket, he went in and seated himself in car No. 2; that car No. 2, thereupon, proceeded on its trip towards the city hall, and at about 59th street its conductor asked plaintiff for his fare; that plaintiff declined to pay again; that, thereupon, the car was stopped, and the conductor fetched plaintiff to the front platform to put him off; that plaintiff then took hold of a handrail by the window to resist the attempt to push him off; that the conductor pinched plaintiff's hand and pulled it open, and then succeeded in forcing plaintiff off; that the plaintiff, thereupon, took the next car, and upon payment thereon of six cents fare was carried to his destination.

The defendant produced three or four witnesses, who testified that car No. 75 did not run so as to connect with car No. 2; that car No. 75 was a through car, and on the day specified by plaintiff did not run into the depot, but continued its through trips, and that for this reason the occurrence, as stated by the plaintiff, could not have happened.

The case was submitted to the jury, and under the charge of the court to the effect, among other things, that in case they found for the plaintiff they might assess exemplary as well as compensatory damages, the jury found a verdict for plaintiff to the amount of $500.

The defendant moved, upon a case made at special term for a new trial, which motion was denied.

The appeal is from the order denyin · motion for a new trial and also from the judgment.

*By the Court:* FREEDMAN, J.—The defendant, by omitting to move for the direction of a verdict and by going to the jury without objection, conceded that the case presented a sufficient conflict of evidence to authorize its submission to the jury. Having voluntarily taken the chance of a favorable verdict at their hands, which would have concluded the plaintiff, upon the facts, we must hold, upon the authority

of *Rowe* agt. *Stevens* recently decided by this court and reported in (12 *Abb. N. S.* 389), that the defendant cannot be permitted to complain of an adverse verdict, by arguing that the case presented no evidence to be submitted to the jury, or at least presented such a preponderance of evidence on defendant's side as to admit of no other verdict except one in defendant's favor.

Allowing, at the commencement of the trial, the amount claimed in the complaint to be increased from $3,000 00 to $5,000 00, without a previous notice of motion therefor, was a matter resting in the discretion of the court. (*Richtmeyer* agt. *Remsen,* 38 *N. Y.,* 206; *Meyer* agt. *Fiegel,* 7 *Robt.,* 122). Not the slightest harm has accrued to the defendant from such amendment, and consequently no reason exists for the interference of the general term with the exercise of that discretion.

The detailed statements made by the court, in charging the jury, of other similar cases and of the action of the courts therein, and the remark to plaintiff's counsel in reply to said counsel's announcement, that he had no exceptions to take, involve no error, but present mere questions of propriety. These are not reviewable on a bill of exceptions and can only be considered on a motion for a new trial, if assigned as a specific ground for the granting of a new trial for the reason, that the jury may possibly have been influenced thereby. Not having been thus urged, we must disregard them on appeal.

Defendant's exceptions to the rulings of the court below in admitting certain evidence and to the refusal of the court to reinstruct the jury, after their retirement under an elaborate charge covering the point respecting which additional information was sought, are clearly untenable.

On the trial defendant's superintendent testified that if a passenger "leaves one car and gets on another he must either pay his fare or produce a transfer. If he does neither, the instructions of the company are to put him off, using as

little force as may be necessary. The only guide to the conductor is the fare or a transfer." Upon this testimony the court was justified in charging that putting a passenger off from a car in case of refusal to pay fare is within the line of the duty and employment of defendant's conductors. And the jury, having by their verdict adopted plaintiff's version of the occurrence, instead of believing the testimony of defendant's witnesses, defendant's liability to respond in damages became fully established. For it is well settled that if an act is done by a servant in the business of the master and within the scope of his employment, the master is liable to third persons for any abuse of the authority conferred and for injuries resulting from any error of judgment or mistake of facts by the servant, as well as for those resulting from a negligent or reckless performance of his duties. This rule applies equally to corporations and natural persons (*Weed* agt. *The Panama R. R. Co.*, 17 *N. Y.*, 363; *Sandford, Admr.* agt. *The Eighth Ave. R. R. Co.*, 23 *N. Y.*, 343; *Drew* agt. *The Sixth Ave. R. R. Co.*, 26 *N. Y.*, 51; *Higgins* agt. *The Watervliet Turnpike Co.*, 46 *N. Y.*, 23).

The remaining question, therefore, is, to what extent the law will hold the defendant liable. This is a grave and most important question. Upon this point the jury were instructed that in case they found for the plaintiff they might assess exemplary as well as compensatory damages. The latter were held to be such as would compensate the plaintiff for the injuries actually sustained, including his pain and anguish of mind and body. The former were defined as damages, which are given as an example by way of punishment, to prevent a repetition of the wrongful act complained of, and they were described as something in the character of a punishment by the people, with the difference, however, that the person injured is the one that recovers the damages instead of the people, by fine or imprisonment.

At the same time the jury were severely cautioned against rendering a verdict for an excessive amount. They were instruct-

ed that the case is not one calling for severe punishment; that if they came to the conclusion that they must find damages for the plaintiff, and that they must be exemplary as well as compensatory damages, they should consider the character of the offense, and affix a sum within the limits of reason by way of example, but not as an act of impulse or of passion, and that they should decide between the plaintiff and the corporation defendant, as they would decide between man and man.   These definitions and instructions were not only substantially correct, but eminently proper, if the case itself justified the instruction in any manner, that the jury might give exemplary in addition to compensatory damages.   Damages for pain and anguish of body and mind are not exemplary or punitory in their character in any strict or proper sense of those terms, but compensatory   *Morse* agt. *The Auburn & Syracuse R. R. Co.* (10 *Barb.*, 621), and in actions for injuries to the person occasioned by the negligence of the defendant, it has been repeatedly held that the plaintiff may recover damages for his pain and suffering not only down to to the time of the trial, but future suffering, which the evidence renders reasonably certain, must, necessarily, result from the injury, may also be compensated *( Curtis* agt. *Rochester & Syracuse R. R. Co.,* 18 *N. Y.,* 534 ; *Affg., S. C.,* 20 *Barb.,* 282 ; *Caldwell* agt. *Murphy,* 1 *Duer,* 233 ; *Affid. in* 11 *N. Y.,* 416).

The same rule as to compensatory damages applies with still greater force to actions of assault and battery, and it is no answer to the enforcement of the rule, that the assault was committed by an agent, if committed by such agent in the line of his duty and within the scope of his employment.   In such case the master is liable as principal.

Now, in *Caldwell* agt. *The New Jersey Steamboat Co.,* (47 *N. Y.,* 296), the present court of appeals fully indorsed the principle that in any case, where exemplary damages may be recoverable against the servant, they should be allowed against the master, if it appears that he had reasonable

notice of the negligent habits of the servant, or if he left the servant without control or supervision in the work. In addition, it was distinctly held, that corporations are not exempt from the infliction of punitive damages in a proper case. That the case at bar is one of that character, seems to be clearly apparent from the decision of the supreme judicial court of Maine in *Goddard* agt. *The Grand Trunk Railway*, reported as a leading case upon the points involved in the 10*th volume* of the new series of the *American Law Register*. Justice WALTON, in delivering the opinion of the court in that case in favor of sustaining a verdict of $4,850 00, discusses at length the question of the liability of corporations as common carriers of passengers for the unlawful acts of their employees committed upon such passengers, to whom the said corporations, as such carriers, owe the legal duty of exercising the highest degree of care that human judgment and foresight are capable of, to make the journey safe. He then gives an interesting review of the origin, growth and application of the doctrine of exemplary damages, and points out that the said doctrine is even more beneficial in point of public interest in its application to corporations than in its application to natural persons. His reasoning upon this point commends itself so forcibly to the intellect, and it is so fully sustained by the numerous authorities cited in its support, that further elaboration of the subject here would be a work of supererogation. A simple reference to it is amply sufficient.

There being no error in the proceedings below, the judgment and order appealed from must be severally affirmed with costs.

CURTIS, *J.* concurred.