# ERASTUS TEFFT V. HARDIN H. WILCOX.

1. PRACTICE: *Improper evidence.* When evidence is admitted over objection made, and exception is taken at the time, it is *not* necessary afterward to move that the improper testimony be stricken out.

2. —— It is not, as a general proposition, allowable for a witness to state his opinion or conclusions from the facts of a case, whether such facts are known personally to him or brought to his notice by testimony of other parties. The exceptions relate to questions of science, trade, and those of a similar nature.

3. —— To allow witnesses, except upon questions of science, trade, and those of a similar nature, to state opinions, which would probably influence the jury in forming their verdict, is substantial error.

4. DAMAGES: *Measure of, in malpractice by physicians and surgeons.* Where damages are recoverable against a physician and surgeon for injuries resulting to a patient by reason of a want of ordinary skill or care on his part, in his treatment of such patient, the pecuniary loss, suffering of the patient, loss of time and actual expenses incurred, if resulting from or through such want of skill or care, may be taken into account by the jury in making up their estimate of damages in such a case. So also, the character of the injury, as to whether it is permanent or temporary in its consequences, and the condition or circumstances of the injured party.

5. EVIDENCE—EXPERTS: *In what manner, and upon what cases, opinions may be given.* An expert cannot give his opinion on the case under trial when the facts are controverted; but counsel must put to him a hypothetical case, and ask his opinion upon such case.

6. —— No questions can be allowed concerning matters involving *points of law only.*

7. SKILL, CARE, AND DILIGENCE. As to what constitutes ordinary skill and ordinary care and diligence on the part of a physician and surgeon, is a question of law, in this view at least, that it must be stated by the court as defined by the books. But when considered in connection with the facts which it is necessary for the jury to understand, in order to be able to apply it to any particular case, it becomes more properly a mixed question of law and fact, and is to be so regarded.

8. CONTRACT AND RESPONSIBLIITY *of physician and surgeon.* A practicing physician and surgeon is not considered as warranting a cure, unless under a special contract for such purpose. But his contract, implied in law, is, that he possesses that reasonable degree of learning and skill ordinarily possessed by his profession; that he will use reasonable and ordinary care and diligence in all cases he undertakes, and his best judgment in case of doubt. He is not responsible in damages for a want of success, unless it is shown to result from a want of such ordinary skill, or ordinary care and diligence; nor is he so responsible for errors of judgment in matters of reasonable doubt; but he must in general apply correctly what is settled in his profession.

*Error from Shawnee District Court.*

ACTION by defendant in error to recover damages for injuries alleged to have been occasioned by plaintiff's failure to " use due and proper care, skill, and diligence," as a physician and surgeon.   The petition states, that in 1866, *Wilcox* " was diseased in his right arm and shoulders with neuralgia and rheumatism," and while so diseased " accidently injured said arm and shoulder," and by the said disease and injury " the said shoulder became dislocated;" that he employed *Tefft*, a practicing physician and surgeon, to treat said disease and injury, and to reset the joints of his arm and shoulder; that said Tefft " did not use due and proper care, skill, or diligence," but did conduct " himself in an ignorant, unskillful and negligent manner in and about his said employment and undertaking," whereby the plaintiff " has nearly lost the use of his said arm and shoulder, and has thereby become wholly crippled, and permanently injured," and has been subjected to great pain and distress, both of body and mind," and has been put to great expense, etc.   Plaintiff claimed ten thousand dollars damages.   Answer, general denial.

The case was tried at the November Term, 1866.   The record is very voluminous; but of the numerous objections and exceptions made and taken to the forms of questions propounded, the admission and rejection of testimony offered, and the character of the testimony admitted, the subjoined opinion contains all that need be stated.

On the trial the plaintiff endeavored to show that his shoulder became dislocated while under treatment by defendant, and that defendant did not discover the dislo-

cation.   The defendant claimed that plaintiff was himself careless and negligent, and did not follow the directions given him by defendant.   The testimony was somewhat conflicting, and much of it was mere  conjecture or opinion, or both.

Numerous instructions were given at the instance of the parties respectively, but it is not deemed necessary to state them in full.   The *fifth*, given at request of plaintiff, (Wilcox,) was as follows :

"5th.   The defendant Tefft was required to  exercise ordinary care, attention, skill, and diligence in the discovery of dislocation, treatment and reduction of dislocation ; and after reduction, such  ordinary care and skill as would best tend to the restoration and curing of the dislocation ; and unless he did all this, and in consequence of failure thereof Wilcox sustained injury, the jury should find for the plaintiff."   To which defendant excepted.

"The court then of his own accord," says the record, charged the jury as follows :

"If the jury believe from the evidence that the defendant held himself out to the community as a  physician and surgeon, and that as such he undertook to treat the plaintiff for the disease and injuries of the shoulder, then the defendant is held to ordinary skill, care and attention in treating the case in accordance with the approved practice of the profession ; and if damage occurred to the plaintiff, by reason of a failure of these requirements, then the defendant is responsible for such damage.

"And in arriving at the measure of damages, the jury may not only consider the actual expenses incurred by plaintiff, but also, loss of time, and such other damages as may appear from the testimony to be the natural result of the injuries occasioned by the defendant."   To which charge the defendant excepted.

The jury found for the plaintiff, and assessed his damages at $2,900, for which sum judgment was given. The defendant brings the case here by petition in error.

Erastus Tefft v. Hardin H. Wilcox.

*Martin & Burns*, for plaintiff in error:

1. The court erred in allowing the following question to be put to, and answer given by, the plaintiff: "What damage have you sustained in consequence of the loss of the use of your right arm and shoulder?" Ans. "The amount claimed in my petition, *fully ten thousand dollars.*" This question could elicit nothing but the opinion of the party himself as to the amount of his damages; and the answer was certainly interfering in a matter wholly for the jury to determine from the facts in the case.

The opinion of a witness is in no case evidence, except when the premises upon which he founded his conclusions cannot be understood by the court or jury without study or knowledge on that special subject, or without the aid of the knowledge of persons whose skill is superior to their own. 10 Johnson, 284; 23 Wendell, 425; 4 Denio, 312; 5 Hill, 603; 29 Barbour, 422; 2 Comstock, 514; 1 Chand., Wis., 178; 7 Foster, N. H., 157.

The admission of illegal evidence, which might have influenced the triers in their decision, is ground of error, though it may not appear that it had in fact any influence. 9 Conn., 129.

2. The law fixes the liability of a physician and surgeon, and requires "reasonable and ordinary care and diligence in the treatment of a case committed to him, and that he will use his best judgment in all cases of doubt as to the best course of treatment." 27 N. H., 460; 28 Maine, 97; 7 Ohio, 8, 23, 462; 8 Carr. & Paine, 475, 487; 7 *id.*, 31, 444; 19 Conn., 566.

What amounts to reasonable and ordinary care and diligence on the part of a physician and surgeon, is a question of law. 8 Ohio St., 576; 8 Gray, 131; 4 Johns., 377.

4

Whether there was care or caution to excuse, or such negligence as fixes the liability, is a question of fact for the jury, the measure of diligence or negligence first being defined by the court. 3 Iowa, 83; 5 Ohio St., 567; 28 Vermont, 180; 2 Redfield on R. W., 198, note 16.

3. The court erred in allowing the following question to be put to and answered by Dr. M———, a witness for plaintiff: "If this dislocation was properly reduced and cared for, what would be the condition of the arm?" Ans.: "In a normal or natural condition."

The question presupposes improper treatment and care on the part of the attending surgeon, and calls for the opinion of an expert on the case where the facts are controverted.

"An expert cannot give an opinion on the case where the facts are controverted, but counsel must put to him a hypothetical case, or supposed state of facts, and ask the opinion of the witness upon these facts." 1 Conn., 1; 1 Chandler, Wis., 264; 2 Mich., 183; 38 Eng. Com. L. R., 601; Elwell on Malpractice, 277.

Experts are always confined to opinions within the scope of their professions, and are not allowed to give opinions or make guesses on things of which the jury can as well judge as the witness. 4 Wendell, 320; 1 Denio, 281; 14 Maine, 398; 9 Conn., 102; 1 Phillips on Ev., 781.

4. The court erred in giving to the jury the fifth instruction asked by the plaintiff below. The rule of legal liability, as given by the court, is incorrect. Such a standard of legal obligation resting upon the surgeon, would require of him extraordinary care and skill, an extraordinary amount of learning in his profession, and

an extraordinary judgment. And in no case, if such be the law, could he escape from errors of judgment on mere matters of reasonable doubt and uncertainty. The physician and surgeon should be held accountable for the exercise of such care and diligence in their employment as common-sense men, of common care and prudence, usually exert where they are equally interested in business of a similar kind and importance. He agrees to be responsible for the want of such care and diligence; and he stipulates in no event, without an express contract for that purpose, for any greater liability. 5 Barn. & Ald., 620; 15 East, 62; 28 Me., 97.

The court also erred in charging the jury, on his own account, that "defendant is held to ordinary skill, care and attention, in treating the case in accordance with the approved practice of the profession; and if damage accrued to the plaintiff by reason of a failure of these requirements, then the defendant is responsible for such damages."

This instruction certainly required of the defendant a degree of skill, care and attention of the highest character known to the profession, and the jury were left to speculate upon "the approved practice of the profession," and fix upon the surgeon such a degree of skill, care and attention as they might see fit to prescribe. 7 Foster, 474, 475.

*A. H. & M. H. Case*, for defendant in error :

1. To determine whether the court erred in permitting certain questions to be answered, it is necessary to ascertain the true measure of damages in cases like the present.

"In all cases, where one person has received personal injury and mutilation by the careless or negligent act of

another, the bodily pain and suffering is part and parcel of the actual injury, for which the injured party is as much entitled to compensation in damages as for loss of time or the outlay of money." Damages for bodily pain and suffering arising from physical injury, and connected with actual loss of time and money, are *not* exemplary or punitory in their character in any strict or proper sense of the term. Here the damages are strictly compensatory for the actual injury, of which the bodily pain and suffering were an *essential* part. *Morse v. The Auburn & S. R. R. Co.*, 10 Barb., 621; *Ransom v. N. Y. & E. R. R. Co.*, 15 N. Y., 415; *Keyes v. Devlin*, 17 N. Y., 518; *West v. Forest*, 22 Mo., 344.

In an action for an aggravated assault and battery, whereby plaintiff lost his leg, the elements of damages were said to be;—1. Loss of time and labor from the date of the assault until plaintiff's restoration to health. 2. Expenses of medical and surgical attendance during illness. 3. Diminished capacity to work at his trade, consequent on the loss of his leg. 4. The bodily pain and suffering of plaintiff. *Dounell v. Sanford*, 11 La. An. R., 455.

It is also often necessary to inquire into the condition in life, pursuits, habits and necessities of the plaintiff in order that the jury may determine what *actual* damage he has sustained. It is very manifest too, that a most important injury must be, whether the injury which the plaintiff has sustained is of a temporary or permanent character. *Caldwell v. Murphy*, 1 Duer, 233; affirmed by the Court of Appeals, 11 N. Y., 416.

But here then was gross negligence, and the jury might give exemplary damages. Sedg. on Dam. 485 to 488, 490 *et seq.*

2. No objection was made to the *form* of the questions. If the above was his *true* measure of damages the questions were proper and pertinent. The question as to the amount of damages cannot be objectionable, as after negligence shown, it was the issue in the case. That it *called* for the opinion of the witness is not true, because the witness could answer the *elements* of damage specifically, and not in the aggregate by dollars and cents. If it was injurious to Tefft, he should have asked that it be ruled out. It could not have influenced the jury, because there was no other evidence in a *lump*, and the jury found only $2900, as the damage, which is fully borne out and sustained by the other evidence in the case.

3. Plaintiff in error complains of the evidence of the experts, as to the duty of an attending surgeon, and especially to the words, "according to the advanced stage of the profession at the time." This is the language of the books: *McCandless v. Mc Wha*, 22 Penn. St. R., 261; Elwell on Malpractice, 31, 32, 55, 56.

Lord Tenterden said in *Richards v. Murdock*, 10, B. & C. 257: "I know not how the materiality of any matter is to be ascertained but by the evidence of persons conversant with the subject-matter of inquiry." Opinions of experts on questions of science are always admissible in such cases. Elwell on Malpractice, 273 to 284; 1 Greenleaf Ev., § 440.

4. What is reasonable care and skill, is a question for the jury. The judge is not bound to define it. *Parker v. Rolls*, 14 Com. B., 691; 6 Eng. 212.

The opinion of the court was delivered by

Safford, J.: Upon the trial of this case in the court below, the plaintiff, now defendant in error, having been

sworn as a witness in his own behalf, was asked among others, the following question: "What damage have you sustained in consequence of the loss of your right arm and shoulder?" The answer of the witness was in the words as follows: '"My answer is, the amount claimed in my petition, fully ten thousand dollars." Both the question and the answer were objected to by the counsel for the defendant; but the objections were over-ruled, and the testimony was allowed to go to the jury, and exceptions to the ruling of the court were taken.

I.    It is contended for the defendant in error that in order to make the exceptions available, the party except-ing ought to have gone further than he did, and moved the court to *rule out* the objectionable testimony. We do not think so. The objections to the question propounded, and to the answer of the witness, were taken in the usual way, and upon such objections being overruled the exceptions to such rulings were also entered according to the usual practice in such cases, and were no doubt sufficient to entitle the party in whose behalf they were so made to any right which he might have by reason of the premises. If therefore under the ruling of the court in allowing the question referred to, to be asked and answered as stated, improper and illegal testimony was put before the jury, the course of the objecting party was such as to save the point as a basis for error to this court.    Sections 300, 301, 302, Code of 1868.

1. PRACTICE. It is not necessary to ask that testimony which was objected to when admitted, be ruled out.

II.    Then, as to the question asked.    It was in no view of the case a proper one.    It was calculated to elicit no facts which would assist the jury in determin-ing for themselves as to the question of damages, but left the whole matter to the mere opinion

2. Witnesses are to testify to facts, not to their opinions.

of the witness.   It was a question resting upon and inclu-
ding a large number of facts, as is evident from the mul-
tifarious proof which was submitted, and the number of
witnesses who were called and testified at the trial; and
it was *such facts themselves* that the defendant was entitled
to have the jury pass upon, and that too uninfluenced by
any opinion of any witness testifying in the relation in
which this witness appeared.   But such right was taken
away by the authority of the court in permitting the
course of inquiry which was pursued in this instance, and
it seems clear that such a ruling ought not to be sus-
tained.   But this matter is placed beyond a doubt, when
the answer of the witness comes to be considered in the
light of the authorities.   " Another general rule, which
pervades all our law is, that the witness is to testify only
to facts.   He is to speak as to the facts, which he has
heard, or seen.   His opinion is not to be given, for it is
the opinion of the jury on the testimony which forms the
verdict and decides the case."   And again :   " The gen-
eral rule which requires a witness to speak to facts within
his knowledge is applied to the subject of compensation ;
the damage must be proved like any other fact in the
cause, and no testimony amounting to a mere opinion is
competent."  Sedgwick on Dam., 699, 700 ; 29 Barb. 422 ;
17 Wend., 137.   There are exceptions to the rule, as thus
expressed, having reference to questions of science, trade,
and to those of a similar nature.   But the question and
answer, and the matter to which the inquiry was direc-
ted in this instance, do not come within any of such
exceptions; and hence the general rule must be held to
govern.

But it is claimed that the evidence complained of, even
if it should be held to have been improperly admitted,

3—and it is error to admit such testimony. could not have operated to the detriment of the plaintiff in error, for the reason that "it could not have influenced the jury, because there was no other evidence in *a lump*, and the jury found only $2900 as the damage." We do not see how the conclusion of counsel results from or follows the premises stated. The jury must have given *some consideration* to all of the testimony which was offered, and more especially to such portions of it as had a direct bearing upon the question of damages; and it is but reasonable to believe that all of such last mentioned evidence must have had more or less influence upon their minds in the making up of their verdict. Just how much, or how strong was such influence, as connected with or resulting from any particular portion, it is impossible to know. But is it not just as impossible for us to say, with any show of reason, that the proof of the case of the plaintiff below, did not, as to the question of damages rest to a very great extent upon this identical statement of the witness? The jury must not only have *considered* all of the testimony offered upon the point in question, but they were *convinced* by it—as witness their verdict—that the plaintiff below ought to recover; and is there any way by which we may decide as to what particular portion of such evidence so operated upon the minds of the jury as to produce such result? If there is, we are not aware of it. Our conclusions then, as to the evidence in question, are, that it was clearly incompetent, and therefore inadmissible; that it might have influenced the jury to render a verdict for a larger amount against the defendant below, than they would have rendered had legal and proper testimony only been given. Here, therefore, is good ground for error. 9 Conn. 129; 29 Barbour, 422.

III.   It is not proposed to refer in detail to the further evidence on the question of damages in this record, or to 4. DAMAGES.— the questions raised in respect thereof upon Measure of in actions for mal- the argument, with the purpose of giving the practice. opinion of the court as to whether they are or are not well taken.   But in view of the fact that further proceedings may be had herein, it may be important to call attention to the rule as to the measure of damages which has obtained in, and has been followed by many highly respectable courts in the trials of actions of a similar nature, and hence may be considered as settled.   It is to the effect, that, notwithstanding the absence of any malice or fraud on the part of an attending physician and surgeon, yet, if injury result to his patient by reason of a want of ordinary skill or ordinary care and attention in the treatment of such patient, the injured party may recover damages for the injury, and such as are compensatory in their nature.   These are held to include pecuniary loss, both direct and indirect, if referable to and resulting from the course of treatment complained of.   Suffering also, which is produced in consequence 'of the acts in question, may be a subject of compensation.   So also the loss of time and actual expenses incurred in consequence of the fault, want of skill, or negligence of the physician. Regard is also to be had in such case to the character of the resulting injury, as to whether it be temporary or permanent in its consequences.   So also, the situation and condition of the injured party may be considered. All of these items may be taken into the account by the jury in the making up of their estimate of damages in a proper case;   and as a matter of course, it follows, that evidence properly referable thereto, and tending to establish such damages as resulting under each particular

head or description would be competent, though such evidence must be free from objection in other respects. This doctrine is supported upon the general principle that when an injury has been sustained, and the law gives a remedy, that remedy shall be commensurate to the injury sustained. See also as to the points named, Sedgwick on the Measure of Damages, 32; 10 Barbour 621; 1 Kernan, 416; 22 Mo., 344; 15 N. Y., 415; 1 Duer, 233.

IV. It appears from the record, that during the progress of the trial, several physicians and surgeons were examined on behalf of the plaintiff who gave testimony as experts, and without knowing the particulars of the case from personal observation. Without specifying particular instances, of which there are several, the court permitted such experts to give their opinions as to matters of fact concerning, and assumed to exist in and constituting this particular case. This is not allowable, as we understand the rule applicable to such examinations, when the facts are disputed, as was the case here. "In such a case the expert cannot give an opinion on the case under trial; but counsel must put to him an hypothetical or supposed state of facts, and ask the opinion of the witness upon these facts." (Elwell on Malpractice, 277, and the cases there cited.) This rule ought to have been followed in this case; and the court failing to enforce it, and the defendant having properly saved his objections in respect thereof, he is in a condition to take advantage of the error whenever it occurred. And that such error is substantial, and calculated to prejudice the rights of the party to be affected thereby, is not doubted; it cannot therefore be disregarded.

*5 EXPERTS. How, and on what, to express opinions.*

V.   It is claimed that in the examination of witnesses in this case, questions were propounded which were of and concerning matters involving points of law only.  It hardly need be said that this course of inquiry was improper, if it occurred as stated. This does not, however, appear to be the case in regard to the portions of the testimony to which our attention is directed under this point, and which had reference to what would be the duty of an attending physician and surgeon under like circumstances as were supposed to exist in this case.

*6. Evidence involving points of law only, not admissible.*

VI.   As to what constitutes ordinary skill, and ordinary care and diligence on the part of a physician and surgeon—it is a question of law, in this view at least, that it is to be stated by the court as defined by the books.   It will be seen however, at a glance, that in order to enable a jury to apply the rule so stated, to particular circumstances, something further is necessary to be done.   Such jury must be informed as to the facts or criterion upon and by which the standard of ordinary skill and ordinary care and diligence rests, and is regulated in these professions.   And to supply such need, evidence may properly be introduced. as showing such facts.   This evidence must, from the very nature of the case, come from experts, as other witnesses are not competent to give it, nor are juries supposed to be conversant with what is peculiar to the science and practice of the professions of medicine and surgery to that degree which will enable them to dispense with all explanations.   Such explanations therefore become necessary.   In this view, the whole question under consideration seems to be one of mixed law and fact, and is so to be regarded.   The questions to which

*7. Skill, care, and diligence—how to be presented to the jury.*

reference is made, so far as they are directed to the end suggested, were proper.

VII.   The testimony in this case was very voluminous, and numerous objections were interposed to the introduction of specified portions of it, (other than those to which we called attention,) on the ground of incompetency, irrelevancy and immateriality.   We have very carefully considered each of the points made, and have reached the conclusion that some of them are well taken, and should be sustained.   It does not seem essential, however, to take up and examine and pass upon the questions thereby presented, and for several reasons: 1st. In view of the conclusion reached in regard to the point already considered in this opinion, the case must go back for a new trial.   2d. Upon such new trial we cannot believe that those errors which we think were committed on the former trial, and to which reference is not made, will be at all likely again to occur; and 3d: In such last view of the matter, no practical good would result from our investigation, which would be commensurate with the task of going over the entire ground suggested upon the face of the record.   And besides this, such investigation would for the most part be an examination into and an assertion of well-established and declared principles of law respecting the examination of witnesses and the introduction of testimony.   It is also to be remarked in this connection, that while some of the questions which were objected to by counsel were no doubt improper, they were of such a character as to result in no particular injury to any one, and the mere fact of their being allowed would not therefore be a sufficient ground for a reversal.

VIII. But objections are also urged to the instructions which were given to the jury.   We do not propose to

discuss these instructions at length, or even to notice all of them; but shall content ourselves with calling attention to some which are especially objected to, and as to these with a single exception, more by way of general remark than by direct or particular examination. It is claimed that the fifth instruction which was asked and given in behalf of the plaintiff below, does not give the correct rule by which to determine the responsibility of the defendant in this case, and for the reason that the standard of legal obligation imposed thereby would require of him extraordinary care and skill, an extraordinary amount of learning in his profession, and an extraordinary judgment. The objection is to a certain extent sustainable. The instruction was liable to be made the means of conveying to the minds of the jury an idea of the undertaking on the part of the surgeon, when he assumes the charge of a case, which the law does not justify. It was therefore calculated to injure the defendant, as requiring too much at his hands. As we understand the current of the decision, as to the undertaking and responsibility of a practicing physician and surgeon, it is to the effect, substantially, and may be stated as follows : He is never considered as warranting a cure, unless under a special contract for that purpose; but his contract, as implied in law, is, that he possesses that reasonable degree of learning, skill and experience, which is ordinarily possessed by others of his profession ; that he will use reasonable and ordinary care and diligence in the treatment of the case which he undertakes; and that he will use his best judgment in all cases of doubt as to the proper course of treatment. He is not responsible in damages for want of success, unless it is shown to result from a want of ordinary skill and learn-

*8. Undertaking and responsibility of practicing physicians and surgeons.*

ing, and such as is ordinarily possessed by others of his profession; or, from want of ordinary care and attention. He is not presumed to engage for extraordinary skill, or for extraordinary diligence and care; nor can he be made responsible in damages for errors in judgment, or mere mistakes in matters of reasonable doubt or uncertainty. See 7 Foster, 460; 28 Maine, 97; 39 Maine, 155.

A careful consideration of the foregoing observations will show that the degree of learning and skill which the physician and surgeon holds himself out to possess, is that degree which is ordinarily possessed by the profession, as it exists at the time, or cotemporaneous with himself, and not as it may have existed at some time in the past. It follows then, that the standard of such ordinary skill may now be in the advance of what it has been in the past, and according to the general and material progress made in the sciences of medicine and surgery. "The standard of ordinary skill which is required of any physician and surgeon, it will be borne in mind, is that degree and amount of knowledge and science which the leading authorities have pronounced as the result of their researches and experience up to the time, or within a reasonable time before the issue or question to be determined is made.—(Elwell on Malpractice, 53.) And such physician and surgeon must in general be held to apply in his practice, what is thus settled in his profession.—(Id., 31.) There is nothing unreasonable in such requirement; and it is no more than that which is expected of the other professions. That which is pronounced as settled in any profession by the leading and standard authorities therein, is within the reach of any practitioner; and his being such practitioner, in general, presupposes the fact, and is guaranty on his part, that he

is in possession of a knowledge of it as so settled. The ideas here advanced are not to be extended so as to embrace what may be known only to and practiced by the highest talent, but should be confined to that which is within the reach of, and may and should be attained by, the more common and ordinary class of practitioners. Regard also is to be had to the circumstances by which the different portions of any one profession may be surrounded, as affecting the question of their proficiency in, and knowledge of advances which may be made in their particular line, and the obligation to be up to such advance. The opportunities by reason of locality, or other circumstance, of one, portion, may be many times more favorable than those of another; and the responsibilities resting upon them would be correspondingly greater. This idea is illustrated by Elwell in his work on Malpractice, pp. 22, 23, where he makes the following observation: "There are many neighborhoods, in the west especially, where medical aid is of difficult attainment. Yet cases of disease and surgery are constantly occurring, and they must of necessity fall into the hands of those who have given to the subject but little if any thought. Thus, the inexperienced and the unlearned attend to the surgery in their way, or it is not attended to at all. * * * In such cases no more can be expected of the operator than the exercise of his best skill and judgment. In large towns and cities, are always found surgeons and physicians of the greatest degree of skill and knowledge. They are to be held to a corresponding high degree of responsibility. * * * In the smaller towns and country, those who practice medicine and surgery, though often possessing a thorough theoretical knowledge of the highest elements of the pro-

fession do not enjoy so great opportunities of daily obser-
vation and practical operations, where the elementary
studies are brought into every day use, as those have who
reside in the metropolitan towns, and though just as well
informed in the elements and literature of their profes-
sion, they should not be expected to exercise that high
degree of skill and practical knowledge possessed by
those having greater facilities for performing and wit-
nessing operations, and · who are, or may be constantly
observing the various accidents and forms of disease. It
will not therefore, as a general thing, require so high a
degree of knowledge to bring this class of physicians up
to the rule of ordinary knowledge and skill as in places
where greater facilities are afforded by which higher
professional knowledge is attainable."

We have remarked above as to the obligation of the
physician and surgeon to apply correctly in his practice
what is settled in his profession. But it is to be remem-
bered that such application is not alone adequate to the
management of the different cases, and the phases thereof
which the practitioner may be called upon to meet. His
best judgment is constantly appealed to, and upon such
judgment he must rely. It is plain to the most casual
observer that there is great room for difference of opinion
in the exercise of the arts of surgery and medicine; and
as a result, there are usually more ways than one of
accomplishing the same thing, and each having its advo-
cates as being equally efficient or even better than any
other. " Good judgments may differ;" and such being
the case, as just remarked, the practitioner must use his
judgment, and follow its dictates in all cases of doubt, or
where they may be a foundation for such difference of
opinion, and if he thus exercises such judgment in an

enlightened and reasonable manner, he will not be responsible for errors. Elwell on Malpractice, 29.

But it is unnecessary to prolong this opinion by further discussion of the points suggested by the record, or by the argument of counsel. The case must be remanded for a new trial upon the grounds first adverted to herein ; and enough has been said as to the law governing cases of this sort, to indicate the opinion of this court upon the more important questions which are raised upon the instructions, and which may be presented on a re-examination of the case.

The judgment is reversed.

All the Justices concurring.