WOODROW W. PERCIFIELD, APPELLANT, v.
HAROLD B. FOUTZ, RESPONDENT.

No. 3825

June 28, 1955.                    285 P.2d 130.

*Michael L. Hines,* Las Vegas, for Appellant.

*Morse, Graves and Compton,* and *W. Bruce Beckley,* Las Vegas, for Respondent.

## OPINION

By the Court, EATHER, J.:

This is an action for damages for alleged injuries temporary and permanent arising out of alleged negligence in the conduct of the defendant-respondent, in the extraction of a wisdom tooth from the mouth of plaintiff-appellant. The prayer is for a total of $39,300 and for other and further relief. The parties will be referred to as they were designated in the lower court.

Plaintiff alleged that defendant broke a saw-type drill, called a burr, in the course of the extraction and caused the same to be lodged in the jaw bone of the plaintiff; that the defendant failed to remove the entire wisdom tooth and caused a portion of the same to remain lodged in plaintiff's jaw bone; that by reason of defendant's negligence plaintiff was caused to undergo additional surgery; that in addition to pain and suffering plaintiff has suffered permanent injuries in the form of numbness in the jaw, nervousness and headaches. All allegations were denied by defendant.

After presentation of the evidence and argument of counsel, the trial court entered judgment for the plaintiff in the amount of $123 on the ground, and no other, that the defendant was negligent only in failing to inform plaintiff that it was possible that portions of the dental burr were in his jaw, and that defendant was

liable only for damages sustained by plaintiff that were proximately caused by defendant's failure to inform plaintiff of the possibility that the burr chips were in his jaw. From this judgment plaintiff has prosecuted this appeal.

The defendant Harold B. Foutz is a dental surgeon, dentist, in the practice of his profession at Las Vegas, Nevada, and had been such for a number of years prior to July 2, 1952.

On July 2, 1952, after plaintiff had been suffering for six hours from a badly diseased and decayed tooth and inflamed and swollen jaw, he went to defendant dentist for treatment. Upon examination defendant determined that the tooth should be extracted, and he immediately proceeded to do so, in order to prevent further infection.

The tooth was anesthetized with novacaine and the mouth sterilized after an X-ray had been taken. During the course of the extraction, it was necessary for defendant to use a drill, called a burr, in order to cut the tooth to permit its removal. In removing the tooth small portions of the burr broke off, but defendant did not know whether these small pieces remained in the gum or not. In view of the fact that the pieces might be lodged in the patient's gum (although defendant couldn't locate them after an examination) and because plaintiff was exhausted and tired, defendant instructed plaintiff to go home and to return the next day for a further examination. The evidence of defendant relative to instructing plaintiff to return on the following day appears throughout his testimony. Defendant's nurse testified that such instructions are given in every case of this type. As against this testimony, there is only the plaintiff's indefinite statement that he does not "recall" the defendant's telling him to return. No other testimony on this point was given.

After the extraction, plaintiff suffered pain and became ill. About three hours later, he had a friend call a medical doctor, and he never again went to or contacted defendant.

As to the matter of the proper standard of care used by defendant, plaintiff admits in his brief that the standard is that "usually exercised by dentists in the locality of Las Vegas." The only testimony on this point is that this standard was so used. No testimony on the point was introduced by plaintiff, whose expert witness testified that he did not know what this standard was.

The medical doctor treated him for several days, giving him penicillin and something for pain. On July 9, a week after the extraction, an X-ray was taken which showed the burr fragments, and for the first time plaintiff was told to see another dentist; but it was not until July 15, six days after being advised to see a dentist, and thirteen days after the extraction, that he finally went to see a dentist and have the pieces of burr removed.

As to the cause of plaintiff's injury, plaintiff's expert witness testified that it "could have been caused by plaintiff's failure to see a dentist at all from the time of the extraction until Dr. Woodbury, a dental specialist in oral surgery (plaintiff's expert witness) saw him two weeks later." He also testified that the inflammation which he treated could have existed prior to the initial extraction.

It is clear from the evidence that the plaintiff suffered pain and numbness of the jaw, lip and tongue after the extraction. However, Dr. Woodbury, plaintiff's expert witness, stated that although it was impossible to say whether plaintiff's failure to return to Dr. Foutz added to the inflammation, it did increase the pain and that the numb areas complained of by plaintiff are "frequent" in this type of operation because of the nerves.

The complete absence of real proof that the failure to remove the burr pieces resulted in the injury was further emphasized by Dr. Woodbury, when he testified to the removal of the burr. He stated that he examined the two fragments of the burr, the tips of the burr, and did not find pus on the burr heads, and that small pieces of metal imbedded in flesh often do not cause pain or infection.

The trial court rendered an oral decision from the bench in which he found from the evidence that the operation performed upon the plaintiff by the defendant was in accordance with the standard of care existing in Las Vegas, Nevada, at that time; that the fact that the drill parts and a piece of broken tooth remained in the jaw of the plaintiff was not negligence per se, but that it was negligence on the part of the defendant in not notifying the plaintiff that the burr points had broken off and that they might be imbedded in the jaw; that defendant's damage naturally flowing from such negligence was the cost of the subsequent X-rays and the removal of the burr points of the tooth in the aggregate sum of $123, for which judgment was ordered to be entered; that there was an existing infection in plaintiff's mouth when he first went to defendant; that the wisdom tooth at the time was badly decayed, which in itself could have caused an infection; that there was no pus on the burr points when they were eventually removed nor anything to show that such bits of metal had caused the infection which led to plaintiff's pain and suffering; that plaintiff had failed to sustain the burden of proof by the preponderance of the evidence that his pain and suffering or subsequent medical expense or a subsequent operation for the removal of another tooth were the result of defendant's negligence.

The trial court made formal findings following such oral decision. In these the court found also that the standard practice of dentists in Las Vegas was to notify patients of any burr parts that the dentist has reason to believe might be in the patient's jaw, and to offer further X-ray service or at least warn the patient to return to the dentist as soon as possible. The court rejected plaintiff's proposed finding that he was not physically capable of returning to the defendant for treatment, and rejected the further proposed finding that the plaintiff was in good health the day before he consulted defendant.

Plaintiff asserts, first, that the trial court was in error in finding that the operation by Dr. Foutz was performed according to the standard of care prevailing in Las Vegas. This, because of the numbness in the jaw which followed the operation and because of absence of evidence showing that such permanent numbness is a usual result. Without going at length into the evidence upon this point, it may be noted that the defendant in his direct examination in his own behalf testified that the procedure followed by him was standard procedure; that one of the two expert witnesses for plaintiff agreed with this, although one of them testified that the practice of using sulphanilimide following the operation was no longer considered good practice. This in our opinion furnished ample support of the finding.

The second and main assignment of error is that, having found negligence in the defendant by reason of his failure to inform plaintiff of the possible presence of burr bits in the tooth socket or jaw, it was error to limit damages to the expense of the following X-rays and the subsequent operation by another dentist to remove the burr points.

In view of the absence of direct testimony to the effect that the burrs caused the subsequent damages and in view of the positive testimony by plaintiff's expert that the inflammation treated by Dr. Woodbury could have existed prior to the extraction, in our opinion the record supports the conclusion that the plaintiff failed to prove that the subsequent pain and suffering were the proximate result of the one item of negligence found in the defendant. If such subsequent pain and suffering could, under the evidence, have been as well the result of infection from which plaintiff was suffering before he was treated by defendant, as the result of defendant's treatment of him, which the trial court was justified in finding, it was, under the authorities, a failure of proof

that the defendant's negligence was the cause of such damage. It is said in Matuschka v. Murphy, 173 Wis. 484, 180 N.W. 821, 824: "It is unnecessary to detail further the scientific and expert evidence appearing in the record. It discloses this situation: Plaintiff had a chronic infection of the lower jaw, of long standing, when he went to the defendants' office for treatment. It was impossible to foretell the future progress of that infection. The subsequent results could have followed from it without the pulling of the tooth at all or by the pulling of the tooth and the subsequent treatment of the jaw according to the most exact scientific methods. They might also have followed from defendant Stromberg's negligent and improper practice and treatment. Which was the cause of the ultimate results cannot be told with any degree of certainty."

In Morris v. Weenie, 258 Mass. 178, 154 N.E. 860, the court said, in substance: "That the plaintiff has failed to maintain the burden of proof if on the whole evidence the question of defendant's negligence is left to conjecture, surmise or speculation. 'If on all the evidence it is just as reasonable to suppose that the cause is one for which no liability would attach to the defendant as one for which the defendant is liable, then the plaintiff fails to make out his case.' "

The judgment is affirmed with costs.

MERRILL, C. J., and BADT, J., concur.