BERNARD E. LOCKART, Appellant, v. KENNETH MACLEAN and WILLIAM MANNING TAPPAN, Respondents.

No. 4344

May 2, 1961

361 P.2d 670

*Fitz-Gerald Ames, Sr.* and *LeRoy W. Rice,* of San Francisco; *Harry A. Busscher,* of Reno, for Appellant.

*Woodburn, Forman, Wedge, Blakey and Thompson,* of Reno, for Respondents.

## OPINION

By the Court, PIKE, J.:

This is an appeal from an order of the trial court

granting respondents' motion for summary judgment.

On August 18, 1956 appellant Lockart, who had fallen and sustained a fracture of the mid-right thigh, was taken to the Washoe Medical Center at Reno where he remained as a patient under the care of the two respondent doctors until his discharge from that hospital on November 13, 1956. On the day following his arrival at the hospital appellant was operated upon by respondents who performed an incision, inserting an intramedullary pin in the fractured femur. Subsequently osteomyelitis, or infection of the bone, developed. Appellant brought suit against respondents, seeking damages and alleging that respondents negligently treated, cared for and operated upon appellant, and that respondents "did not exercise the degree of care, skill and learning ordinarily possessed by hospitals and physicians and surgeons practicing in the same locality." Respondents, by answer, denied all material allegations of appellant's complaint. Appellant took the depositions of both respondent doctors and also that of the record clerk of Washoe Medical Center who produced and identified the hospital records pertaining to the treatment received by appellant while a patient.

On September 23, 1959 respondents filed a motion for summary judgment under Rule 56 NRCP, stating that the motion was made on the ground that there was no genuine issue as to any material fact in the action, and respondents were entitled to judgment as a matter of law. In making the motion respondents relied upon their own above referred to depositions, as well as the affidavits of Edwin Cantlon, M.D., William A. O'Brien III, M.D., and Eugenia LaFevere, surgical nurse. In support of appellant's opposition to the granting of said motion, the affidavit of Dr. David J. Tepper, an osteopathic physician and surgeon with offices in Oakland, California, was offered in evidence. The offer was rejected for lack of a showing of competency on the part of the affiant Dr. Tepper.

NRCP, Rule 56, subd. (c), under which the motion for summary judgment was made, after providing that the motion may be made with supporting affidavits, and that the adverse party may serve opposing affidavits, states

in part "The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Subd. (e) of the same rule provides "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions or by further affidavits."

The parties stipulated that the affidavits of Edwin Cantlon, M.D., William A. O'Brien III, M.D., and Eugenia LaFevere, surgical nurse, might be considered in support of respondents' motion for summary judgment. These affidavits may be summarized as follows: Dr. Cantlon's affidavit, after outlining his background of education, training and experience in medicine and surgery, including some 14 years' practice in Reno, stated that he was a former chief of staff of both Washoe Medical Center and St. Mary's Hospital in Reno, Nevada and, at one time, had been called upon to review and establish the standards of surgical and orthopedic practice in Reno; that he had participated in surgery with most surgeons in Reno and, by observation, knew the standard of surgeons in that locality. Based upon the hospital records and respondents' depositions, he expressed his opinion that the standard of conduct of respondent doctors was in accordance with the standards of surgeons in Reno and that, in his opinion, there was no basis in fact for appellant's claim that said respondent doctors did not meet or comply with the said standards. This affiant also stated that, in his opinion, the cause of the infection and osteomyelitis which appeared in patient Lockart's right leg subsequent to the operation was impossible of determination, and that the procedures selected by the respondent doctors to

combat the same were proper and in accordance with the standard of conduct of surgeons and orthopedic surgeons practicing in Reno, Nevada.

Dr. O'Brien's affidavit showed that he had practiced medicine in Reno for about 13 years, was a former chief of staff of Washoe Medical Center and, as such, had assisted in establishing the procedures and standard of conduct for members of the staff and had, among other things, established a sepsis committee to formulate procedures to control hospital infections; that affiant had, on occasion, observed the work of every surgeon serving in the area at either Washoe Medical Center or St. Mary's Hospital, and knew the standard of conduct of surgeons and orthopedic surgeons practicing in said area; that affiant was the anesthesiologist for Bernard Lockart during his operation by Dr. Maclean; and that, in his opinion, the preoperative preparations to guard against infection were excellent in that instance, as were the methods selected by Dr. Maclean to reduce the fracture, and that the same were in accordance with the standard of conduct of surgeons and orthopedic surgeons practicing in Reno, Nevada. Affiant stated that, in his opinion, it was impossible to determine the cause of infection or osteomyelitis in patient Lockart, and further stated that the same will occur even though the highest degree of care is exercised by those in attendance, and that such care was exercised in this particular instance. The affiant further stated his opinion, based upon his review of the records, that the postoperative care and treatment of patient Lockart by respondent doctors, and the procedures selected by said doctors to combat the infection and osteomyelitis were proper and in accordance with the standard of conduct of surgeons and orthopedic surgeons practicing in Reno, Nevada. The affiant stated that the infection was recognized immediately and every precaution taken thereafter to combat it; that it was treated vigorously; that it was affiant's belief that, even with proper technique, approximately one percent of all surgical patients will develop infection and that, in affiant's opinion, there was no basis in fact for Lockart's claim that respondent doctors did not meet or comply with the standard of

conduct of surgeons in Reno, Nevada, in either the diagnosis, preoperative care, operation, and postoperative care and treatment.

The affidavit of Eugenia LaFevere, surgical nurse, who was present at the Lockart operation, stated the procedures followed to protect against infection before and after surgery and that the same were followed in the surgery performed upon appellant.

Dr. Tepper's affidavit stated that he had studied the records of the Washoe Medical Center concerning Lockart and the depositions of Drs. Cantlon and Tappan and "that your affiant, based upon his study and review of the records and depositions and his practical knowledge of what is usually and customarily done by physicians and surgeons under similar circumstances to those confronted by the defendants in this action, and upon his knowledge of the standard of conduct of surgeons and orthopedic surgeons practicing throughout the United States, states: * * *." Dr. Tepper's affidavit enumerated the following as not "in accordance with good practice throughout the United States": the manner in which Lockart had been prepared for surgery; the failure to delay surgery for a longer period in order to permit "bodily equilibrium to be regained"; failure to irrigate with antibiotics and with a widespread incision to remove necrotic material, following the removal of a bone fragment on September 2, 1956; the use of physiotherapy on September 26, 1956. The affidavit also stated that the failure to take a blood culture for a specified purpose in the early postoperative period and regularly thereafter "was not proper and in accordance with the standards of physicians and orthopedic surgeons throughout the United States." The affidavit asserted that the internal fixation of a nail should have been supplemented with external support of plaster spica.

Dr. Tepper's affidavit also contained two further items, namely; that, in Dr. Tepper's opinion, the cause of the infection and osteomyelitis was due to the improper preparation of the operative skin surface and the lack of preparation of the patient for surgery; that, in affiant's opinion, the respondent doctors "did not meet

or comply with the standard of conduct of surgeons and orthopedic surgeons practicing in the United States in either the diagnosis, preoperative, operative and postoperative care and treatment of patient, Bernard Lockart." Dr. Tepper's affidavit contained citations to medical treatises, without quoting from the texts so referred to.

Two prior decisions of this court, Corn v. French, 71 Nev. 280, 291, 289 P.2d 173, and Percifield v. Foutz, 71 Nev. 220, 285 P.2d 130, have used language indicating, without holding, that the test of the competency of a witness to give opinion evidence, medical or surgical, concerning the standards prevailing in a given locality in this state, would require a prior showing by the witness of his knowledge of such standards. This rule pertaining to the competency of the expert witness in the fields of medicine and surgery, sometimes referred to as the "locality rule," has been liberalized in certain jurisdictions so as to provide, in effect, that a showing of competency may be made by establishing that the witness is familiar with the standards prevailing in the particular locality or a similar locality. Prosser, Torts 134 (2d ed. 1955). Appellant urges that the locality rule is unduly restrictive, considering the changes and progress that have been made in the wider and faster dissemination of information pertaining to developments in the fields of medicine and surgery. See Anno. 8 A.L.R. 2d 772.

It appears unnecessary to review the arguments advanced in support of the application of the "locality rule" requiring that the medical witness seeking to give opinion evidence must first show his knowledge of the standards prevailing in the particular locality. The legal authorities indicate that it is the rule in the majority of jurisdictions. We are in accord with the views expressed by the trial court that, in the instant case, there was no sufficient showing in Dr. Tepper's affidavit to qualify him to give an opinion admissible in evidence that the diagnosis, preoperative, operative and postoperative procedures taken and followed by

defendants were not in accordance with the standard of conduct of surgeons and orthopedic surgeons practicing in Reno, Nevada. Dr. Tepper's affidavit stated that such procedures on the part of respondents were not in accordance with those standards throughout the United States in the particulars mentioned in his affidavit. His affidavit shows that, with the exception of training had by him in Denver, Colorado in 1943 and in Kansas City the following year, the affiant had received all of his other education and training and had conducted his practice solely within the state of California. Under the argument advanced by appellants, based upon the background referred to, Dr. Tepper would be competent to testify concerning the standards of surgeons in communities of all sizes, urban or rural, accessible or isolated, without regard to the relative medical facilities of the same or how widely separated from each other, so long as within the United States. Neither practice nor presence at any time in the community would be a prerequisite to the competency of the witness.

Under the present facts we consider that the liberalizing of the rule pertaining to competency, based upon knowledge of standards of surgeons and orthopedic surgeons, to the extent of making the locality the entire geographical United States would, in effect, constitute such an extensive and unjustifiable relaxation of the locality rule as to amount to an abandonment of the same. Even though under certain circumstances and in the furtherance of justice a trial court might, in the exercise of its discretion, relax the locality rule so as to permit competency of an expert witness to be established by a showing of knowledge of standards in a similar rather than the same locality, this would in no way constitute a recognition of the principle here contended for by appellant.

Appellant urges error on the part of the trial court in refusing to strike the affidavits of Drs. Cantlon and O'Brien, and Eugenia LaFevere, surgical nurse. These affidavits conform with the requirements of NRCP, Rule 56, subd. (e). Further, appellant stipulated that

the affidavits might be considered in support of respondents' motion for summary judgment.

The affidavits of Drs. Cantlon and O'Brien referred to each of such doctors having studied the medical records of Washoe Medical Center concerning appellant Lockart and the depositions of the respondent doctors as a basis for certain opinions expressed by each affiant. Upon oral argument appellant urged error on the part of the trial court in permitting respondents to use the depositions in support of respondents' motion for summary judgment. Our attention was not directed to any such prior objection having been made in the trial court. The depositions of respondent doctors were taken at the instance of appellant. Each was an adverse party and each was called as an adverse witness by appellant. The surgical nurse, whose deposition was taken by appellant, produced the medical records of appellant Lockart and photostatic copies of the same. These records were, of course, available to all parties to the action. The parties having stipulated that the affidavits of the doctors, which referred to the depositions, might be used by respondents, we find no merit in the contention now made by appellant that such use of the depositions by respondents constituted error.

Affirmed, with costs to respondents.

BADT, C. J., concurring:

I agree that under the generally recognized majority rule Dr. Tepper was not competent to testify that the several acts and omissions of respondents were not in accord with good practice in the particular locality. I agree, too, that this is not a proper case in which we should essay a re-examination of that rule. However, in view of the recognized standing of such a hospital as Washoe Medical Center, and in view of the great advancements in communication, publication, and general professional knowledge of medical and surgical science over the many years since the first promulgation of such rule, I feel that this first formal acceptance of such rule by this court should not be taken as precluding

us, in a proper case in the future, from re-examining said rule and, if necessary for the just determination of any specific case, reconsidering and possibly departing from its general application.

McNAMEE, J., concurring:

I concur in the result.

The primary question involved in this appeal relates to the qualification of Dr. Tepper to give evidence as a medical expert. Dr. Tepper's affidavit failed to show that he was familiar with the standard of care and practice exercised by members of the medical profession either in Reno, in neighboring towns, or in some other area where conditions were similar to those in Reno. It was because of this omission that the trial court refused to receive Dr. Tepper's affidavit in evidence in opposition to the motion for summary judgment.

It is to be noted that in the first cause of action contained in appellant's complaint, appellant alleged: "That the defendants above named, through their agents, servants, and employees, did not exercise that degree of care, skill and learning ordinarily possessed and exercised by hospitals and physicians and surgeons practicing in the same locality during said times and places, to the present date * * *."

The second cause of action charges respondents with a failure to communicate to appellant the risk and hazard inherent in the treatment given appellant.

The third cause of action charges respondents with negligently failing to call into consultation other specialists and negligently entrusting the performance of the physical examination, diagnosis, care, and treatment of appellant to unskilled and incompetent persons.

With respect to these last two causes of action, Dr. Tepper's affidavit was silent and no other evidence relating thereto was presented on behalf of appellant.

It appears that primarily because of the aforesaid pleadings the majority opinion herein recognizes the so-called "locality rule" which bases the competency of a medical expert upon his knowledge of the standard of care, prevailing in the particular locality.

I reach the conclusion to affirm not by establishing as a law of this state the "locality rule," but on the basis that the qualification of a medical expert to testify in a malpractice action is a question for the sound discretion of a trial court irrespective of whether he is familiar with the standards of care within the particular community and that its ruling will not be disturbed upon appeal unless a clear abuse of discretion is shown. See Hundley v. St. Francis Hospital, 161 Cal.App.2d 800, 327 P.2d 131. The "locality rule" is meeting more and more with disfavor by the courts due to the improvement of medical and hospital standards and the expansion of the requirements for qualification of medical practitioners.

In commenting upon the "locality rule," the court in Gist v. French, 136 Cal.App.2d 247, 288 P.2d 1003, after terming it archaic, said:

"It was not without merit in former days when distances were great and the mode of travel was in keeping with muddy lanes, swollen streams and impassable mountains; when the means of communication were restricted to handwritten letters; when medical journals were rare and their contents were largely concerning personalities. Today the discoveries of insulin, iron, quinine, strychnine or the antibiotics is instantly heralded throughout the civilized world and as speedily communicated are the methods of administering them and the symptoms for which they are to be applied. Every great hospital in the land maintains systems for preserving statistical information relative to the treatments of diseases and injuries, much of which is published to the medical world in attractive journals, whereby practitioners are equipped immediately to utilize the new remedies. The same is true with respect to all new methods and devices of the surgical art. The ubiquity of such knowledge, the popularity of ethical standards in every part of the nation and the uniformity of curricula in medical schools have combined to create one community of medical practitioners out of the 48 states and the District of Columbia."

The various recent decisions which are concerned with the competency of medical experts, although the rules

resulting therefrom appear to differ in certain cases, establish one principle common to all which is that appellate courts endeavor to uphold the lower courts in the exercise of their discretion in the determination of competency whenever possible.