TERRY ORCUTT, APPELLANT, *v.* RUSSELL F. MILLER, M.D., LTD., A NEVADA CORPORATION, AND RUSSELL F. MILLER, INDIVIDUALLY AND AS AGENT, SERVANT AND/OR EMPLOYEE OF RUSSELL F. MILLER, M.D., LTD., RESPONDENTS.

No. 9931

June 7, 1979 595 P.2d 1191

[Rehearing denied July 31, 1979]

*C. A. "Jack" Nelson, Chartered,* Las Vegas, for Appellant.

*Rose, Edwards, Hunt & Pearson, Ltd.,* Las Vegas, for Respondents.

[2]MR. JUSTICE NOEL E. MANOUKIAN, voluntarily disqualifed himself and took no part in this decision. The Governor, pursuant to Art. VI, § 4 of the Constitution, designated Judge Peter I. Breen of the Second Judicial District to sit in his stead.

## OPINION

By the Court, MANOUKIAN, J.:

In 1969 appellant, Terry Orcutt, consulted respondent, Dr. Miller, complaining of nausea, vomiting, diarrhea and dizziness. Orcutt remained under Dr. Miller's care for a period of nineteen months, during which time he was admitted for treatment on three occasions to Sunrise Hospital in Las Vegas.

Appellant's condition progressively worsened, and, on July 8, 1971, the patient traveled by air ambulance to Santa Barbara, California where, immediately upon his arrival, the diagnosis of toxic megacolon was made, and within two hours thereafter, a colectomy performed.

Subsequently, on June 26, 1973, appellant filed suit in the district court for compensatory and punitive damages alleging respondent was guilty of malpractice. Respondent, by answer, denied all of the material allegations of the complaint. Following two unsuccessful efforts to depose respondent (the result of respondent's failure to appear), appellant took Dr. Miller's deposition pursuant to a court order, and secured the records of Sunrise Hospital pertaining to the treatment appellant received while a patient there.

On June 3, 1976, respondent filed a motion for summary judgment pursuant to NRCP 56(b), on the grounds that there was no genuine issue as to any material fact in the action, and that respondent was entitled to judgment as a matter of law. In support of his motion, Dr. Miller relied upon his own deposition and that of Dr. Kenneth Smith of Las Vegas, an American board certified specialist in surgery, now retired. In opposition to respondent's motion, appellant proffered the affidavit of Dr. Thomas J. Imperato, an American board certified specialist in internal medicine and the then acting chief, section of gastroenterology at the University of California, Davis, School of Medicine, wherein Dr. Imperato stated that in his opinion appellant's condition "may have been precipitated by (1) poor medical care and (2) the injudicious use of opiates during an acute flare up of the patient's colitis." Appellant's expert concluded that Orcutt had not been given "optimal therapy."[1] Dr. Imperato later sought leave to amend his affidavit to reflect his opinion that appellant's condition was "probably" precipitated by Dr. Miller's poor medical care. Appellant offered the amended affidavit but the trial judge summarily refused to consider it. Accordingly, the court granted Dr. Miller's motion for summary judgment, finding specifically that appellant had failed to establish a breach of the accepted standard of care.

---

[1] The last paragraph of Dr. Imperato's affidavit reads as follows:

However, on the last hospital admission, I feel that the medical management may have precipitated toxic megacolon. It was well known before 1970 (i.e. 1967) that opiates administered during an acute exacerbation of ulcerative colitis can precipitate toxic megacolon. In fact, In Harrison's Textbook of Medicine, 6th edition, 1970, Chapter 32, page 1509, the admonition of not attempting to use opiates to control diarrhea in severely ill patients is made. The hospital records of Mr. Orcutt's last admission

Alleging the trial court erred in granting respondent summary judgment and in refusing to allow the amended affidavit of Dr. Imperato, Orcutt appealed. In ruling on the propriety of the summary judgment, two issues confront us: (1) whether the trial court abused its discretion in refusing to consider the amended affidavit of appellant's medical expert; and (2) whether the locality rule should apply when the defendant doctor is a board certified specialist.

*1. The amended affidavit.*

Appellant contends that because the amended affidavit of Dr. Imperato raises a genuine issue concerning respondent's negligence, it should have been considered by the trial court, and respondent's motion for summary judgment should have been denied. We agree.

In a medical malpractice action a plaintiff confronted with a motion for summary judgment has the obligation to establish (1) the accepted standard of medical care or practice, (2) that the doctor's conduct departed from the standard, and (3) that his conduct was the legal cause of the injuries suffered. Lockart v. Maclean, 77 Nev. 210, 361 P.2d 670 (1961).

Summary judgment is proper when it appears that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." NRCP 56(c). On appeal, we must view the facts and the inferences arising therefrom in the light most favorable to the party against whom the motion was granted. Potter v. Mutual Benefit Life Ins. Co., 93 Nev. 90, 560 P.2d 914 (1977); United States v. Diebold, Inc., 369 U.S. 654 (1962).

The amended affidavit of appellant's expert, submitted on the date set for hearing of respondent's motion for summary

---

show that he was given large doses of opiates during the entire admission. Additionally, the chest x-ray of July 5, 1971 showed air fluid levels which may have indicated ileus or obstruction. There is no mention in Mr. Orcutt's record of this having been followed up. I can only conclude that although toxic megacolon is a known and feared complication of severe ulcerative colitis[,] in this particular case, it may have been precipitated by (1) poor medical care and (2) the injudicious use of opiates during an acute flare up of the patient's colitis.

judgment,[2] contains persuasive allegations to the effect that Dr. Miller's treatment "probably" precipitated appellant's ultimate condition. Even if the original affidavit was insufficient to raise a genuine issue as to respondent's negligence, the amended affidavit certainly did, and in our view, the trial judge committed reversible error by failing to consider it, notwithstanding appellant's procedural derelictions in presenting the affidavit. A claimant's day in court and right to a trial on the merits are too vital to be lost the result of circumstances such as those presently before us, especially in light of the preliminary, yet harsh, nature of the summary judgment herein imposed and the failure on the part of respondent to demonstrate any prejudice.

NRCP 56(e) authorizes the trial court to permit amendment or supplementation of affidavits, and on this record, we hold that respondent waived the perceived untimeliness of the proffered amended affidavit, and that the trial judge erred in refusing to consider it. We turn now to consider the applicable standard of care.

### 2. The standard of care.

We are asked to reconsider the applicable standard of care in medical malpractice cases. In granting summary judgment for respondent, the lower court relied on the strict locality rule, announced in Lockart v. Maclean, *supra,* and followed in Foreman v. Ver Brugghen, 81 Nev. 86, 398 P.2d 993 (1965). See Bakerink v. Orthopaedic Associates, Ltd., 94 Nev. 428, 581 P.2d 9 (1978). Appellant questions whether the locality rule should continue as the rule of law applicable in this case.

In Lockart v. Maclean, *supra,* the locality rule was said to require that a medical witness seeking to give opinion evidence in a malpractice action must first show his knowledge of the standards prevailing in the particular locality. *Id.* 77 Nev. at 215, 361 P.2d 673.[3] Since *Lockart,* most modern courts have abandoned the strict locality rule, at least with respect to American Medical Board certified specialists. See, for example, Shilkret v. Annapolis Emergency Hospital Ass'n, 349 A.2d 245

---

[2]Procedurally, the amended affidavit was late. Then Rules of Practice for the Eighth Judicial District Court, Rule XXI; *cf.* EDCR 2.3(b) effective April 3, 1978. However, because respondent's own procedural derelictions during discovery may have contributed to appellant's inability to timely submit the amended affidavit, we hold that respondent is estopped to assert untimeliness as a reason to deny consideration of the amended affidavit.

[3]In Lockart, *supra,* this court adhered to the strict locality rule and held that a physician who had received none of his training in Nevada and had conducted his practice solely in California was *not competent* to give his medical opinion as to the standard of practice in Reno.

(Md. App. 1975); Kronke v. Danielson, 499 P.2d 156 (Ariz. 1972); Naccarato v. Grob, 180 N.W.2d 788 (Minn. 1970); Belk v. Schweizer, 149 S.E.2d 565 (N.C. 1966); Shier v. Freedman, 206 N.W.2d 166 (Wis. 1973); Blair v. Eblen, 461 S.W.2d 370 (Ky. App. 1970); Pederson v. Dumouchel, 431 P.2d 973 (Wash. 1967).

Historically, the strict locality rule is based on the rationale that there exists gross inequality between physicians practicing in large urban areas and those practicing in more remote rural communities. The policy behind the rule was to prevent the small town practitioner from being held to the standard of practice of the more sophisticated urban areas. See Smothers v. Hanks, 34 Iowa 286 (1872); Tefft v. Wolcox, 6 Kan. 46 (1870); see also Waltz, The Rise and Gradual Fall of the Locality Rule in Medical Malpractice Litigation, 18 DePaul L. Rev. 408 (1969). The rule has been sharply criticized by modern courts as insulating from malpractice liability any physician who is the sole practitioner in a community, Waltz, *supra,* at 411, and as engendering a "conspiracy of silence" which effectively precludes the possibility of obtaining expert medical testimony by one doctor against another in a given medical community. Note, 40 Fordham L. Rev. 435, 438 (1971); Shilkret v. Annapolis Emergency Hospital Ass'n, *supra.* The reasons underlying the strict locality rule a century ago simply do not justify its continued existence today, see Note, An Evaluation of Changes in the Medical Standard of Care, 23 Vand. L. Rev. 729 (1970).

Whatever the continuing validity of the locality rule in cases involving general practitioners, a question we find unnecessary to here decide (since respondent and appellant's expert are both board certified specialists), we hold that it is not the standard to be applied to board certified specialists. In this age of ubiquitous national communication networks and increasing standardization of medical training, the underpinnings of the locality rule are extremely doubtful. Board certified specialists should be held to national standards of the specialty. Some nineteen medical specialties have been recognized and national requirements for certification are imposed. Additionally, a national accrediting system contributes to the standardization of medical schools throughout the nation. *Id.* Moreover, the duration of the residency training, curriculum requirements and examinations are established by the national boards. Kronke v. Danielson, *supra.* New techniques, data and medical

literature are immediately available to doctors through medical journals, other periodicals, and correspondence courses. It is clear to us that the locality rule is no longer the favored rule, in great part due to the improvement of medical standards and the enhancement of communications systems among the medical profession.

With respect to general practitioners, the American Law Institute proposes the "similar communities" standard. Restatement (Second) of Torts §299A (1965). That section provides:

> *Unless he represents that he has greater or less skill or knowledge,* one who undertakes to render services in the practice of a profession or trade is required to exercise the skill and knowledge normally possessed by members of that profession or trade in good standing in similar communities. (Emphasis added.)

*Id.* The exception concerns board certified specialists. According to the Restatement, specialists are to be judged on a standard measured by the skill and knowledge common to other specialists. Restatement (Second) of Torts §299A, comment (d) (1965). As a medical expert specializing in the same area as Dr. Miller, Dr. Imperato is competent to testify as to the standard of care of internal specialists in circumstances similar to those here involved. See NRS 41A.100. The expert's opinion that Dr. Miller's treatment of appellant departed from accepted standards of the specialty and "probably" caused appellant's ultimate condition was sufficient to overcome respondent's motion for summary judgment.

We are in agreement with the position of the Restatement and the substantial line of cases which have overruled their prior decisions relying on the locality rule, as applied to specialists. Kronke v. Danielson, *supra;* Christy v. Saliterman, 179 N.W. 2d 288 (Minn. 1970); Naccarato v. Grob, *supra;* Shilkret v. Annapolis Emergency Hospital Ass'n, *supra;* and see Annot., 37 ALR 3d 420, 432 (1971). We expressly overrule Lockart v. Maclean, *supra,* insofar as it may be read to have application to board certified specialists, and hold that in order to recover in a medical malpractice case, a plaintiff must demonstrate that the defendant specialist failed to meet the standard of skill and care expected of a reasonably competent practitioner in the same specialty wherever practicing. Robbins v. Footer, 553 F.2d 123, 129 (D.C. Cir. 1977). We express no

opinion regarding the standard of care required of general practitioners.

We reverse the order of the district court granting respondent summary judgment.

MOWBRAY, C. J., and THOMPSON and BATJER, JJ., concur.

GUNDERSON, concurring:

I concur in the result.