[Civil No. 3927.   Filed March 21, 1938.]

[77 Pac. (2d) 455.]

BERLIE B. BOYCE and NANNIE E. BOYCE, Appellants, v. EDGAR H. BROWN, Appellee.

Mr. E. S. Clark and Mr. John M. Levy, for Appellants.

Messrs. Sloan, Scott & Green, for Appellee.

LOCKWOOD, J.—Berlie B. Boyce and Nannie E. Boyce, his wife, hereinafter called plaintiffs, brought suit against Edgar H. Brown, hereinafter called defendant, to recover damages for alleged malpractice by the defendant upon the person of Nannie E. Boyce. The case was tried to a jury and, at the close of the evidence for plaintiffs, the court granted a motion for an instructed verdict in favor of the defendant, on the ground that there was no competent testimony that he was guilty of any acts of commission or omission

sufficient, as a matter of law, to charge him with malpractice. Judgment was rendered on the verdict, and, after the usual motion for new trial was overruled, this appeal was taken.

■ There are four assignments of error set up in plaintiffs' brief. The first is that the court erred in sustaining defendant's objection to certain questions asked by plaintiffs of one of their witnesses. Objection is made to this assignment on the ground that it is insufficient under the rules of the court. The particular questions to which the objections were sustained do not appear in the assignment, although reference is made in the assignment to certain pages of the reporter's transcript as containing them. We have held that this is. an insufficient assignment of error. *Reilly* v. *Atchison,* 4 Ariz. 72, 32 Pac. 262; *Pinal County* v. *Heiner,* 24 Ariz. 346, 209 Pac. 714.

The third assignment was waived by plaintiffs in their reply brief. This leaves remaining the second and fourth assignments of error. The second is that the court erred in directing a verdict in favor of defendant, because of the failure of plaintiffs to produce evidence of the standard of care required of defendant, and

" . . . for the further reason that, as the evidence stood at the close of plaintiffs' case, it was obvious that the negligence of the defendant in November, 1934, was gross and inexcusable, in that he afforded the plaintiff Nannie E. Boyce no treatment or remedy whatsoever,. although fully aware that she was suffering great pain in her ankle at that time, which suffering, as he knew or should have known, was due to the presence of the screw in her ankle, although he had never apprised either of the plaintiffs that it was there; and that the condition of the ankle at that time was substantially the same,.save for some accentuation of the pain and suffering, as it was in January, 1936, when examined by Dr. Kent.''

■ The fourth is the general one that the rulings and instructions of the court and its judgment were contrary to the law and the evidence, and that the judgment had no support in the evidence. This is too general for consideration. *Pinal County* v. *Heiner, supra.* The sole question for our consideration, therefore, is whether, taking the evidence as strongly as is reasonably possible in support of plaintiffs' theory of the case, as we must do when the court instructs a verdict in favor of defendant, there was sufficient evidence to sustain a judgment in favor of plaintiffs.

While the complaint alleges negligence in treatment up to February 1, 1936, and there is some evidence as to treatment in the winter of the last-mentioned year, the assignment of error, it will be noted, is based solely upon alleged malpractice of the defendant in November, 1934, no claim being made in the assignment that the evidence sustains a claim of malpractice at any other time. We therefore examine the record to see what it shows in regard to any malpractice at that time. In so doing, it will be necessary for us to consider the evidence as a whole, and we therefore state it as follows: About September 1, 1927, plaintiffs engaged the services of defendant, who for many years had been a practicing physician and surgeon in Phoenix, to reduce a fracture of Mrs. Boyce's ankle. This was done by means of an operation which consisted, in substance, of making an incision at the point of fracture, bringing the broken fragments of bone into apposition, and permanently fixing them in place by means of a metal screw placed in the bone. Defendant continued to attend Mrs. Boyce for three or four weeks following such operation until a complete union of the bone had been established, when his services terminated. There is no serious contention in the record that defendant did not follow the approved medical standard in the treatment of the fractured bone up to

this time. No further professional relations existed between the parties until seven years later, in November, 1934, when Mrs. Boyce again consulted him, complaining that her ankle was giving her considerable pain. He examined the ankle, wrapped it with adhesive tape, and then filed the edge of an arch support, which he had made for her seven years before, and which, from use, had grown so thin that the edge was sharp. About a week later he removed the bandage. Her ankle, however, did not improve after this treatment, but continued to grow more painful until January, 1936, some two years later. At this last-mentioned time she returned to defendant, who again examined the ankle. A few days later she went to visit Dr. Kent of Mesa, who, on hearing the history of the case, and noticing some discoloration and swelling, caused an X-ray of the ankle to be made. This X-ray showed that there had been some necrosis of the bone around the screw. Dr. Kent operated upon Mrs. Boyce, removing the screw, and she made an uneventful recovery, the ankle becoming practically normal.

There are certain general rules of law governing actions of malpractice, which are almost universally accepted by the courts, and which are applicable to the present situation. We state them as follows: (1) One licensed to practice medicine is presumed to possess the degree of skill and learning which is possessed by the average member of the medical profession in good standing in the community in which he practices, and to apply that skill and learning, with ordinary and reasonable care, to cases which come to him for treatment. If he does not possess the requisite skill and learning, or if he does not apply it, he is guilty of malpractice. *Butler* v. *Rule*, 29 Ariz. 405, 242 Pac. 436. (2) Before a physician or surgeon can be held liable as for malpractice, he must have done something in his treatment of his patient which the

recognized standard of good medical practice in the community in which he is practicing forbids in such cases, or he must have neglected to do something which such standard requires. 48 C. J. 1112, and cases cited. (3) In order to sustain a verdict for the plaintiffs in an action for malpractice, the standard of medical practice in the community must be shown by affirmative evidence, and, unless there is evidence of such a standard, a jury may not be permitted to speculate as to what the required standard is, or whether the defendant has departed therefrom. *Butler* v. *Rule, supra*; *Rising* v. *Veatch,* 117 Cal. App. 404, 3 Pac. (2d) 1023; *Connelly* v. *Cone,* 205 Mo. App. 395, 224 S. W. 1011. (4) Negligence on the part of a physician or surgeon in the treatment of a case is never presumed, but must be affirmatively proven, and no presumption of negligence nor want of skill arises from the mere fact that a treatment was unsuccessful, failed to bring the best results, or that the patient died. 48 C. J. 1142, 1143, and cases cited. (5) The accepted rule is that negligence on the part of a physician or surgeon, by reason of his departure from the proper standard of practice, must be established by expert medical testimony, unless the negligence is so grossly apparent that a layman would have no difficulty in recognizing it. Herzog, Medical Jurisprudence, § 192; *Butler* v. *Rule,* 33 Ariz. 460, 265 Pac. 757; 48 C. J. 1150, and cases cited. (6) The testimony of other physicians that they would have followed a different course of treatment than that followed by the defendant is not sufficient to establish malpractice unless it also appears that the course of treatment followed deviated from one of the methods of treatment approved by the standard in that community. *Hazen* v. *Mullen,* 32 Fed. (2d) 394, 59 App. D. C. 3.

With these principles of the law governing the relation of physician and patient, and malpractice actions

arising out of that relation as a guide, let us consider the record to see whether plaintiffs presented sufficient evidence to sustain a judgment in their favor. Two questions present themselves to us: (a) What was the treatment which defendant gave Mrs. Boyce in November, 1934? and (b) What was the medical standard which he was required to conform to, under all the circumstances, in giving her treatment at that time? The treatment given, according to her own testimony, consisted in an ordinary examination of the ankle, the smoothing of an arch support which she was then wearing, and the wrapping of the ankle with adhesive tape, with the suggestion that the tape be left on for a few days. About a week later Mrs. Boyce returned and the tape was taken off. The evidence does not show that she ever came back to defendant for further treatment in November, 1934, or, indeed, until January, 1936. The next question is whether the examination and treatment given by defendant departed from the established standard for cases like that of Mrs. Boyce. The only testimony we have which, in any manner, bears upon medical standards or the proper treatment of Mrs. Boyce in November, 1934, is that of Dr. Kent, who performed the operation on the ankle in January, 1936, and of defendant. The latter testified that he did what was required by Mrs. Boyce's condition as it existed then. Dr. Kent's testimony as to the condition he found in 1936, and what he did, is clear and distinct. He was asked as to how long prior to that time the screw should have been removed, and stated that he could not answer; that, if the ankle was in the same condition as it was when he operated, he would say that the screw should have been removed, but that it was impossible for him to testify as to when the condition justifying removal arose. He was questioned more fully and answered substantially that his first conclusion, if he had been in

the position of defendant, when Mrs. Boyce called on the latter in November, 1934, would have been that arthritis in the ankle joint was causing the pain, but that he would not have been fully satisfied without having an X-ray made of the ankle. On cross-examination he testified that the method of uniting bone used by defendant was a standard one, and that the screw was not removed, as a rule, unless it made trouble. Nowhere, however, did Dr. Kent testify as to what was the proper standard of medical care required at the time defendant treated Mrs. Boyce in 1934, or as to whether, in his opinion, the treatment given deviated from that standard. The nearest he came to such testimony was the statement that he personally would have had an X-ray taken, but he did not say the failure to do so was a deviation from the proper standard of treatment.

Counsel for plaintiffs, in their oral argument, apparently realized the weakness of their evidence on the vital point of what the proper medical standard required in 1934, and based their claim of negligence almost entirely upon the failure of defendant to take an X-ray of Mrs. Boyce's ankle at that time. They urge that this comes within the exception to the general rule, in that a failure to do so is such obvious negligence that even a layman knows it to be a departure from the proper standard. We think this contention cannot be sustained. It is true that most laymen know that the X-ray usually offers the best method of diagnosing physical changes of the interior organs of the body, and particularly of the skeleton, short of an actual opening of the body for ocular examination, but laymen cannot say that in all cases where there is some trouble with the internal organs that it is a departure from standard medical practice to fail to take an X-ray. Such things are costly and do not always give a satisfactory diagnosis, or even

as good a one as other types of examination may give. In many cases the taking of an X-ray might be of no value and put the patient to unnecessary expense, and, in view of the testimony in the present case as to the arthritis which Mrs. Boyce had, and which Dr. Kent testified would have been his first thought as to the cause of Mrs. Boyce's pain in 1934, we think it is going too far to say that the failure to take an X-ray of Mrs. Boyce's ankle at that time was so far a departure from ordinary medical standards that even laymen would know it to be gross negligence. Since, therefore, there was insufficient evidence in the record to show that defendant was guilty of malpractice, under the rules of law above set forth, the court properly instructed a verdict in favor of the defendant.

The judgment of the superior court is affirmed.

McALISTER, C. J., and ROSS, J., concur.