448 ·P.2d 429

Cornelius L. FISKE and Natalie Fiske, husband and wife, Appellants,

v.

Wesley A. SOLAND, Appellee.

No. 2 CA–CIV 614.

Court of Appeals of Arizona.

Dec. 18, 1968.

Rehearing Denied Jan. 14, 1969.

Review Denied Feb. 18, 1969.

William Messing, Tucson, for appellants.

May, Dees & Newell, by Paul F. Newell, Tucson, for appellee.

MOLLOY, Judge.

This is an appeal by the plaintiffs from an adverse judgment in a malpractice action brought against a surgeon in connection with treatment of a skin cancer. For our consideration, questions are presented as to whether the jury should have been instructed on the doctrine of "informed con-sent," whether the trial court gave proper instructions to the jury on the standard of care required of a practicing physician, whether certain rulings on evidentiary matters were proper and whether the evidence supports the jury's verdict in favor of the surgeon.

The essential facts are as follows. The plaintiff, Cornelius L. Fiske, had been troubled for some months with a festering wart on the index finger of his right hand and went to the defendant-surgeon, on March 31, 1964, on the referral of his family physician. The defendant, for several years, had specialized in the practice of surgery in the Tucson community, with some emphasis upon the treatment of cancer. The examination conducted by the defendant in his office on this first visit caused him to recommend surgical removal of the wart and an area of skin surrounding it, and arrangements were made by the surgeon for the use of the operating room at a local hospital. Prior to this operation, on April 11, 1964, the defendant did not cause a laboratory analysis to be made of the lesion. When it was removed, a biopsy report indicated that the area was infected with squamous cell carcinoma, a type of cancer which affects skin tissue. A skin graft from the plaintiff's thigh was accomplished at the same time as this area was removed and, though the area became infected after the operation, infection was successfully treated by the defendant so that the skin graft was successful. The carcinoma at the site of this surgery was completely removed and, when it subsequently became necessary to surgically amputate the plaintiff's right arm, no further cancer was found at the site of the original lesion.

On a subsequent checkup of the plaintiff, on June 10, 1964, numerous small areas along a vein in the plaintiff's right forearm leading from the index finger were found to be swollen. The defendant-surgeon first diagnosed this condition as being caused by the bacterial infection which had previously been eradicated from the site of the surgery, but, on June 19, a portion of one of these lumps was excised for laboratory analysis,

and it was disclosed that the lump was caused by cancerous cells which were invading the vascular system of the right arm. This laboratory report was received by the defendant on June 23, and on June 24, the plaintiff was hospitalized at the United States Veterans Hospital at Tucson, where, after a series of tests, his right arm and muscles attached thereto were removed by a Veterans Administration surgeon. There is no question in the medical testimony but what this radical surgery was necessary at this time in order to forestall further spread of the cancer.

The complaint filed sounds in negligence; there are no allegations of lack of consent or a claim for battery. The pretrial order determined the factual issues to be these:

"1. Did the Deft. fail to meet the standard of professional care required in this area?

"a. Did the Deft. fail to perform proper tests prior to the surgery?

"b. Did the Deft. fail to warn the Pltf. of possible consequences of the surgery?

"c. Was the surgery property [*sic*] performed?

"d. Was the postoperative care properly conducted by the Deft?

"2. Was the Deft. negligent in the second surgery performed in June in any of the above stated manners?

"3. Was there any negligence throughout the procedure in the diagnosis or treatment of the Pltf?

"4. If the Deft. was negligent, what were the proximate results of that negligence, and what are the Pltf's damages?

"5. Was Dr. James A. Cutshaw a licensed physician at the time his deposition was taken and, if not, is that fact admissible and what effect should be given to it?"

The plaintiff contends that issue No. 1(b) raises the issue of "informed consent" and that the trial court was in error " * * * in taking the doctrine of informed consent away from the jury * * * " Argument of the plaintiff discloses that the particular rulings complained of are those denying requested instructions on the doctrine of "informed consent."

The plaintiff points out that, in his testimony, he asserted that the defendant-surgeon did not inform him that he was suspected of having a skin cancer until sometime after the operation of April 11, and that, if he had known of this diagnosis, he would not have consented to this surgery. The testimony of the surgeon is directly contradictory to this assertion, but, in ruling upon the propriety of the denial of instructions, we accept the plaintiff's version at its full worth.

This court decided in Shetter v. Rochelle, 2 Ariz.App. 358, 409 P.2d 74 (1965), opinion modified, rehearing denied, 2 Ariz.App. 607, 411 P.2d 45 (1966), petition for review denied April 12, 1966, that there is a fundamental difference between a battery action, based upon the theory of lack of informed consent, and a malpractice action. We believe the pleadings and the pretrial order clearly place this case in the latter category. The nature of the action is made clear when we examine the plaintiff's claims of damage, contained in both the complaint and in the requested instructions to the jury. These do not seek recovery for the pain and suffering or for any disability caused by the April 11th operation but rather for the loss of the right arm and the disability and suffering caused by this amputation.

If plaintiff was damaged by this April operation, it was not because of the inherent nature of the operation itself, but rather because the operation was unskillfully performed. Plaintiff does not suggest that he was injured by the actual removal of tissue from his index finger nor the graft which was placed over the incised area. The evidence is undisputed that this operation resulted in the removal of cancerous tissue and that the skin graft was successful.

Moreover, as in *Shetter,* it is most clear from this record that the plaintiff understood the nature of the surgical pro-

cedure of April 11, and that he consented thereto. Accordingly, we see no grounds for the giving of the "informed consent" instructions, which would have injected into this case the law of battery and would have obfuscated the factual issues upon which the jury was required to determine.

▮ *Shetter* recognizes, 2 Ariz.App. 367, 409 P.2d 74, that, aside from the theory of battery, malpractice may consist of failure to disclose, and that, if injury proximately results from such conduct, recovery may be had. But here the instructions requested enunciated a strict rule that the surgeon was obligated to inform his patient of "* * * all matters within his knowledge affecting the interests of the patient," and "* * * any hazards of the proposed treatment which are known to the physician." These instructions go far beyond the duty to inform as declared in *Shetter*. Moreover, the instructions were inextricably combined with a battery theory.[1] It is our view that it would have been error to have given them.

▮ The plaintiff contends that the trial court erroneously instructed the jury that

the standard expected of the defendant was that of other surgeons in the same community rather than the standard of care in the same or similar localities. The trial court instructed the jury in accordance with the pronouncements contained in the Supreme Court opinion of Boyce v. Brown, 51 Ariz. 416, 421, 77 P.2d 455, 457 (1938), that the standard is that of "* * * medical practice in the community * * * *" In ruling upon these contentions, the trial court made the comment that: "If the law is going to be changed in this state it has to be done by higher courts." We find ourselves in similar position. McKay v. Industrial Commission, 103 Ariz. 191, 438 P.2d 757 (1968).

In passing, we note there is a trend in appellate decisions to broaden the standard so as to include not only that pertaining in similar communities, but to encompass the standards of the medical practice of the country as a whole. See, e. g., Pederson v. Dumouchel, 72 Wash.Dec.2d 73, 431 P.2d 973 (1967), and cases cited therein.[2] It is

1. "INSTRUCTION NO. 9 [as requested by plaintiff]
  "You are instructed that the relationship between a physician and patient is a fiduciary one. This relationship requires the physician to make a full disclosure to the patient of all matters within his knowledge affecting the interests of the patient. Included within the matters which the physician must advise the patient are the diagnosis of the ailment, the nature of the proposed treatment and any hazards of the proposed treatment which are known to the physician. Every adult person has the right to determine for himself whether or not he will subject his body to hazards of any particular medical treatment.
  "You are instructed that if you find from the evidence that defendant Soland knew or should have known that the treatment he proposed to administer to the plaintiff involved hazard or danger, he was under a duty to advise the plaintiff of said fact, *and if you further find that defendant Soland did not advise the plaintiff of such hazard or danger, then you must find for the plaintiff*." (Emphasis added)

"INSTRUCTION NO. 10 [as requested by plaintiff]
  "You are instructed that a physician and surgeon owes a duty to his patient to make a reasonable disclosure of all significant facts, under the circumstances of the situation, which a reasonable medical practitioner or surgeon would make under the same or similar circumstances, and conversely, a physician violates his duty and *subjects himself to liability if he withholds any facts which are necessary to form the basis of an informed and intelligent consent by the patient to the proposed treatment*." (Emphasis added)
  When taken together with plaintiff's damage instructions, which were generally given by the court, the above-instructions, if given, would have imposed liability upon the surgeon for all damage resulting from the amputation, a surgical procedure performed by another surgeon, even though the only postulated failure to warn pertained to the surgical removal of the wart by the defendant.

2. *Pederson*, supra, actually holds that it was error to give the type of instruction requested by plaintiff here, pertain-

our view that it is most possible our Supreme Court may wish to modernize the now thirty-year-old rule of *Boyce* in the light of these decisions, but we doubt that it will consider this case a proper vehicle to do so. This is for the reason that there is no showing in this record that the standards of the medical profession in the Tucson community are any lower, or any different, from those in similar localities or in the country at large. Hence, it is improbable that the plaintiff was prejudiced in this particular case by the limited instruction given by the court, even if erroneous. See Ariz.Const. art. 6, § 27, A.R.S.

The third question attempted to be raised by the plaintiff is as to whether it was error for the court to refuse to give seven different requested instructions. The thread of the argument on appeal is that, by failing to give these instructions, the court neglected to present to the jury any instructions to guide it in connection with its consideration of issue 1(a) of the pretrial order: "Did the Deft. fail to perform proper tests prior to the surgery?"

■ Several of the instructions requested by the plaintiff and refused by the court singled out a duty to make a proper diagnosis. In defending the trial court's rulings, the appellee asserts that this question was covered by other instructions, and with this, we agree. The principal issue presented to the jury was whether the defendant had been guilty of "negligence or malpractice" and the jury was instructed that, if the defendant in his treatment of the plaintiff did not have or apply the degree of skill and learning possessed by the average member of the medical profession in good standing in the community in which the defendant practiced, it might find him guilty of negligence or malpractice.[3] The jury was further instructed that it is the duty of one who holds himself out as a specialist in a particular field of medical science to have the knowledge and skill ordinarily possessed and to exercise the care ordinarily used by specialists in good standing practicing in the same field.[4] A cautionary instruction as to the nature of the defendant's liability was phrased in terms that the defendant must have " * * * *done something* in his treatment of the patient which the recognized standard of good medical practice of the community * * * forbids or that he *neglected to do something* which such standard requires." [5] (Emphasis added)

We find nothing in the instructions given that in any way foreclosed the jury from predicating a verdict upon failure to properly diagnose. We believe that jurors would understand that proper diagnosis is one of the duties of any treating physician and if it had found the defendant guilty of malpractice in connection with diagnosis, under the instructions of the court, it would have found for the plaintiff. Hence, without holding that it would have been improper to give an affirmative instruction on the duty to properly diagnose, we see no reversible error in the instructions that were given and refused.

■ The plaintiff complains that the court refused to admit in evidence a small folder purportedly issued by the American Cancer Society. The argument is made that, because the defendant was a member of the American Cancer Society, and an officer in this state's branch of that society, in some way this pamphlet became admissible in evidence. No authority is cited in this regard and it seems very clear to us that this handout is inadmissible as hearsay. Moreover, we see nothing in the tract which has any bearing upon the issues of this case.

ing to "similar" communities. The decision adopts the standard of " * * * an average, competent practitioner acting in the same or similar circumstances." 431 P.2d 978.

3. Reference is had to defendant's instruction No. 4.

4. Reference is had to plaintiff's instruction No. 12.

5. Again, reference is had to defendant's requested instruction No. 4.

The plaintiff complains that the court denied a motion denominated a "motion in limine" to suppress evidence in these words:

"* * * moves this court for an order ordering counsel for the defendant to refrain from bringing to the attention of the jury the following:

"That plaintiff's medical witness, Dr. James A. Cutshaw, was brought before the court and the medical society on a hearing to deprive him of his medical license due to alleged acts of immorality in that the late Dr. Cutshaw had allegedly had intercourse with a minor female. The only reason to bring up this bit of business would be to prejudice the plaintiff's case by heaping scorn on the witness, which has nothing whatsoever to do with his medical qualifications to testify as an expert.

"Further to allow plaintiff to read the deposition of Dr. James A. Cutshaw, deceased, into evidence for the reason that he is dead, and to delete therefrom the sentence on page 5, line 26, and to have it read as follows:

"'Yes, I am engaged in the practice of medicine now.'" [6]

The defendant countered with a motion to suppress the entire deposition of Dr. Cutshaw on the grounds that he did not demonstrate knowledge of the standard practice of surgery in the Tucson community, that the opinions expressed in the deposition were based upon hearsay and that the license of the witness to practice medicine had been revoked. Both motions were denied by the court, in advance of trial.

At the trial, without further ruling by the court, the parties stipulated that the jury should be advised that Dr. Cutshaw's license to practice medicine had been revoked by the Medical Society of the State of Arizona and that this action was taken upon the basis of "* * * his alleged commission of having had sexual intercourse with a minor female of the age of fifteen years who was his housekeeper and also his patient." The jury was also informed that this action of the Medical Society had been reversed on appeal to the superior court and that thereafter the court of appeals had reversed the decision of the superior court and reinstated the decision of the Medical Examiners. See In re Cutshaw, 6 Ariz.App. 330, 432 P.2d 474 (1967), review denied April 16, 1968.

Over the objection of the defendant, the deposition of Dr. Cutshaw was admitted in evidence in its original form. The defendant did not insert into the record any information pertaining to Dr. Cutshaw's status as a physician or the reasons for the revocation of his license, other than as indicated above.

The only possible basis of error in the record would be the ruling upon the motion to suppress, for the court made no adverse ruling at the trial itself. The motion, heard in advance of trial, asked for broad relief. The defendant made no direct objection to that portion of the motion directed at the disclosure of the reason for the revocation of the license. If granted, the motion would have prevented the defendant from bringing to the jury's attention, under any circumstances, the fact of the revocation of the witness's license to practice medicine. We do not believe that the trial court can be censored for denying the motion at this preliminary stage.

In this state, specific facts of misconduct not amounting to a felony are not admissible for impeachment purposes. State v. Johnson, 94 Ariz. 303, 383 P.2d 862 (1963); State v. Harris, 73 Ariz. 138, 142, 238 P.2d 957 (1951). Under this rule, it would be an unusual trial situation which would permit the interjection into the record of the alleged act of misconduct that

---

6. The actual response given by Dr. Cutshaw was:
"Yes. I—the situation of my license is in the court at the present time but I am engaged in the practice of medicine now."

resulted in the revocation of Dr. Cutshaw's license. In considering the problem at hand, it must be noted that these plaintiffs are not injured any more by a showing that this witness lost his license by reason of a specific act of immoral conduct than if the revocation had been for reasons of incompetency. That plaintiff's counsel reached a similar evaluation is indicated by the trial stipulation that the jury should be fully informed as to reason for the revocation.

As to the fact of revocation itself, it must be remembered that the plaintiff was presenting Dr. Cutshaw as an actively practicing physician in the Tucson area. In the deposition of this witness, the plaintiff had made every effort to develop the witness's qualifications, by showing his membership in medical societies, his possession of hospital privileges, and his holding of a license to practice in two other states. Under these circumstances, it is at least arguable that the defendant should be able to detract from the witness's qualifications by showing that, at the time of trial, and at intermediate time or times, the witness's license to practice medicine in this state had been revoked.

Moreover, the setting of this ruling must be considered. There is no rule of procedure providing for this so-called "motion in limine," and no decision has been called to our attention requiring reversal for an improper ruling made on such a motion.[7] It is our view that many evidentiary points are very difficult for a busy trial court to fully appreciate until presented in the perspective of the actual trial. We refuse to reverse for the trial court's failure to give a pretrial advisory opinion as to the admissibility of this evidence. In our view, the stipulation entered into by the plaintiffs, under which the jury was given the full facts as to the matter under discussion, precludes the plaintiff from asserting error on appeal.

7. There is substantial authority that a defendant in a criminal action may not complain on appeal of an erroneous ruling on a pre-trial motion to suppress evidence obtained in violation of constitu-

 The last assertion of error is that the judgment is against the weight of the evidence. There were three medical doctors, including the defendant, who testified that the defendant acted properly in every way in treating the plaintiff's malady. The only contrary evidence was from Dr. Cutshow, who testified that the treatment accorded the plaintiff by the defendant was unsatisfactory. We hold that the verdict was sufficiently supported by the evidence.

Judgment affirmed.

HATHAWAY, Chief Judge, and KRUCKER, J., concur.

tional rights. See State v. Yough, 49 N.J. 587, 231 A.2d 598 (1967); McGee v. State, 230 Ind. 423, 104 N.E.2d 726 (1952).