499 P.2d 156

**Mabel M. KRONKE, Petitioner,**

v.

**Harry DANIELSON, Respondent,**

**The Honorable Morris Rozar, Judge of the Superior Court of the State of Arizona, in and for the County of Maricopa, Division 13, thereof.**

No. 10778.

Supreme Court of Arizona, In Banc.

July 13, 1972.

Rehearing Denied Sept. 12, 1972.

Pain & Julian by Fred J. Pain, Jr., Phoenix, for petitioner.

William B. Revis, Phoenix, for petitioner.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears by Harry J. Cavanagh and Frank A. Parks, Phoenix, for respondent.

HOLOHAN, Justice:

By special action, the petitioner sought to have a ruling of the superior court excluding testimony set aside as an abuse of discretion. We accepted jurisdiction, heard the matter, made a prompt ruling, issued an order prohibiting the superior court from excluding the proposed testimony, and noted that a written opinion would issue in due course.

The petitioner was the plaintiff in a malpractice action against the respondent physician. In the course of the trial, counsel for the petitioner called as a witness a neurosurgeon who practiced in Los Angeles, California. Through this witness, counsel intended to show that the respondent physician, in his treatment of petitioner, had not followed the standard of practice for physicians skilled in the speciality practiced by the respondent. The witness had never practiced in Arizona, and counsel for petitioner was not able to establish through an Arizona specialist, solely on the basis of personal experience, that the practice in both areas was subject to the same standards. In a hearing out of the presence of the jury, the matter was argued, and, while the Arizona physician indicated that the techniques for operations and diagnosis are the same in this state as elsewhere, counsel for the respondent objected that such information was not first hand information through practice in the questioned area, and therefore, not admissible. The court sustained the objection ruling that the testimony of the Los Angeles neurosurgeon was not admissible because that physician was not qualified by personal experience to state what the standard of practice was for the community where the respondent practiced. The trial court based his ruling on those cases which held that the standard of care in a medical malpractice case was the exercise of that skill ordinarily practiced by physicians in the same community.

Counsel for the petitioner secured the consent of the trial court for a short postponement so that the matter could be presented by special action to this Court.

This Court is very loath to accept special actions involving attacks on rulings of trial judges on evidence during the course of trial. There must be compelling reasons for such procedure. In this case there was some apparent conflict in

the decisions between divisions of the Court of Appeals. See Harris v. Campbell, 2 Ariz.App. 351, 409 P.2d 67 (1965), and Fiske v. Soland, 8 Ariz.App. 585, 448 P.2d 429 (1968). Moreover, appeal was not an adequate remedy in that petitioner was totally paralyzed from the neck down, existing on welfare, and unable to await the outcome of a lengthy appeal period. In view of the above compelling considerations we accepted jurisdiction.

The question presented is whether a medical witness, for the purpose of expressing an opinion on the standard of care required in a medical speciality, must be familiar by personal knowledge with the practice in the locality where defendant practices his speciality. Of necessity, this raises the primary question of whether the standard of care required in a medical speciality is to be judged on a locality or community standard or a general standard for the speciality.

Medical care, treatment, and procedures are usually matters of special knowledge, so expert opinion is necessary to educate the trier of the facts in the particular field of controversy. In a medical malpractice case it usually becomes necessary for testimony to be produced to establish what the standard of medical practice is for the treatment of the case in question. The rule developed that the standard of medical practice or care was referable to a geographic area such as the locale where the defendant practiced. In Butler v. Rule, 29 Ariz. 405, 242 P. 436 (1926), the rule was announced that the degree of skill and knowledge required to be exercised by a physician was that which physicians and surgeons practicing in similar communities ordinarily exercised. In 1938 Boyce v. Brown, 51 Ariz. 416, 77 P.2d 455 (1938), held that the standard of practice was to be judged by the established standard in the community in which the defendant physician practiced. The rule as announced in Harris v. Campbell, supra, was that the standard of good medical practice must be based on the care and skill exercised generally by physicians of ordinary

care and skill in the community involved or similar communities. The rule in *Boyce* was criticized, but upheld in Fiske v. Soland, supra. It appears that the rule in Arizona has wavered between the same community where the defendant practices and the same or similar community.

The Court of Appeals in Fiske v. Soland, supra, wisely commented:

"In passing, we note there is a trend in appellate decisions to broaden the standard so as to include not only that pertaining in similar communities, but to encompass the standards of the medical practice of the country as a whole. See, e. g., Pederson v. Dumouchel, 72 Wash. 2d 73, 431 P.2d 973 (1967), and cases cited therein. It is our view that it is most possible our Supreme Court may wish to modernize the now thirty-year-old rule of *Boyce* in the light of these decisions, * * *." 448 P.2d 432–433.

In those jurisdictions which require a geographic locale test, the area embracing the so-called locale may be, depending on the jurisdiction: the same or defendant's community; the same or similar community; or the general neighborhood or vicinity of the defendant. The principal cases in each of these categories are the subject of a comprehensive annotation in 37 A.L. R.3d 420 et seq.

The American Law Institute has taken the position that the standard should be "in similar communities."

" § 299A. Undertaking in Profession or Trade

Unless he represents that he has greater or less skill or knowledge, one who undertakes to render services in the practice of a profession or trade is required to exercise the skill and knowledge normally possessed by members of that profession or trade in good standing in similar communities." Restatement, Second, Torts.

The exception noted in the rule is in the case of those representing that they possess greater skill in the profession. The specialist in a branch of medicine comes un-

der the exception, and such specialist would be judged on a standard measured by the skill and knowledge common to other specialists. Restatement, Second, Torts § 299A. Comment (d).

We believe that the modern trend supports the position of the Restatement. We are impressed by the reasoning in those cases which have abolished the locale rule. For a review and citation of such cases see 37 A.L.R.3d 432 § 3(d), and "The Standard of Care of a Medical Specialist—Local or National," Charles B. Bernstein, *Medicolegal Monograph,* American Medical Association, December, 1964. For the present we specifically reserve and limit our decision to those physicians who represent that they are specialists in a particular field of medicine. We decline, at this time, to change the rule in regard to general practitioners, and as to such physicians, we believe the rule to be the "same or similar community" test. There is, of course, some dissatisfaction with this rule by some authorities, but for our part we limit the present decision to specialists.

It is interesting to note that the physicians in this case felt that the same procedures were followed in their speciality throughout the United States. As one physician testified:

"I see patients who have had neurologic workups and operative procedures and I see the workup, I get the record from a doctor in Chicago or Los Ange-

les; I attend meetings where operative techniques and diagnostic techniques are discussed; and I have the feeling that we do things much the same here as they do elsewhere." (Exh. 2, pp. 4–5)

It is well known that the various specialities of medicine have set up uniform requirements for certification of specialists. The length of residency training, subjects to be covered, and even examinations are established by the national boards. Since medicine recognizes a standard for specialists not based on geography, the law should join in upholding such standards.

■■ We hold that, for a plaintiff to recover in a medical malpractice case involving a specialist, he must prove that the defendant specialist in his acts failed to meet the standard of care required of physicians in the same speciality practiced by the defendant. To qualify an expert to express an opinion on what that standard of care is for the speciality of the defendant, the party offering the witness must establish the witness' knowledge and familiarity with the standard of care and treatment commonly practiced by physicians engaged in the same type of speciality as the defendant.

Writ made permanent.

HAYS, C. J., CAMERON, V. C. J., and STRUCKMEYER and LOCKWOOD, JJ., concur.