572 P.2d 1201

**Donald C. POLLARD, Administrator of the Estate of Mary McKibben Pasley, Deceased, for and on behalf of Mary Jane McKibben, a minor, and Stephen L. McKibben, a minor, surviving children of Mary McKibben Pasley, Deceased, Appellants,**

v.

**M. L. GOLDSMITH, M.D. and Jane Doe Goldsmith, his wife, Appellees.**

**No. 1 CA–CIV 3447.**

Court of Appeals of Arizona, Division 1, Department B.

Dec. 20, 1977.

Hofmann, Salcito & Stevens, P.A. by Daniel R. Salcito, Leroy W. Hofmann, Michael D. Hawkins, William B. Revis, Ltd. by William B. Revis, Phoenix, for appellants.

Black, Robertshaw, Frederick, Copple & Wright, P.C., by Jon R. Pozgay, Law Offices of Richard T. Ball by Richard T. Ball, Phoenix, for appellees.

## OPINION

EUBANK, Acting Presiding Judge.

This is an appeal from the trial court's grant of summary judgment for the defendant in a medical malpractice action. The issue is whether the plaintiffs' response to the defendant's motion for summary judgment showed that they would be able to offer evidence at trial establishing the applicable standard of care, and thereby created a genuine issue as to a material fact precluding summary judgment. We hold that the response was sufficient to establish a fact issue and that summary judgment was inappropriate in this case.

On May 17, 1969, Mary McKibben Pasley, a 32-year-old mother of two, was involved in an automobile accident in which she suffered a compound comminuted ankle fracture.[1] Following emergency room treatment at Luke Air Force Base Hospital, Mrs. Pasley was transferred to John C. Lincoln Hospital in Phoenix. At Lincoln Hospital, Mrs. Pasley's injuries were treated by Dr. M. L. Goldsmith, the defendant. On May 27, 1969, despite various treatments by Dr. Goldsmith, Mary McKibben Pasley died as a result of tetanus infection.

The appellants brought an action against Dr. Goldsmith, alleging that his professional negligence caused the death of Mrs. Pasley. Dr. Goldsmith moved for summary judgment on the ground that the plaintiffs had not shown that they could produce an expert witness who would testify that Dr. Goldsmith's treatment of Mrs. Pasley fell below the applicable standard of care. The plaintiffs' response to the motion contained an affidavit of Dr. N. L. Robles. The affidavit described Dr. Robles's educational background, and listed several articles and speeches authored by him on the subject of tetanus infection. It stated that he practiced in Tucson, Arizona, and that he was familiar with the standard of practice of physicians, regardless of specialty, who are engaged in the treatment of traumatic injuries. Finally, the affidavit set forth specific instances in which Dr. Robles contended that Dr. Goldsmith was negligent in the treatment of Mrs. Pasley. Dr. Goldsmith argued that the affidavit of Dr. Robles was insufficient because it failed to state specifically that Dr. Robles was familiar with the standard of practice in Phoenix, Arizona.

The trial court issued a Minute Entry granting summary judgment. Prior to the entry of formal judgment, the plaintiffs

---

1. A compound comminuted fracture is one in which the bone has been splintered or crushed, and some portion of the fractured bone has penetrated the skin surface and created an open wound. *Dorland's Illustrated Medical Dictionary* 616–17 (25th Ed. 1974).

filed a motion to reconsider, submitting with the motion an amended affidavit of Dr. Robles, which stated that, at the time of the treatment of Mrs. Pasley's injuries, the standard of care in Tucson was the same as that practiced in Phoenix. The motion to reconsider was denied, and the plaintiffs have appealed from the summary judgment.

The principles of law applicable to this matter are well established in Arizona. In *Boyce v. Brown,* 51 Ariz. 416, 77 P.2d 455 (1938), our Supreme Court required that proof of professional negligence must be given by expert medical testimony, unless the negligence was so grossly apparent that a layman would have no difficulty in recognizing it. *Id.* at 421, 77 P.2d at 457. This expert medical testimony may come from either a third party expert or the testimony of the defendant doctor. *Evans v. Bernhard,* 23 Ariz.App. 413, 416, 533 P.2d 721, 724 (1975). The standard of care to be established by the expert testimony is a nationwide one for specialists and a local one for general practitioners. *Kronke v. Danielson,* 108 Ariz. 400, 403, 499 P.2d 156, 159 (1972). Finally, several Arizona cases have held that a plaintiff faced with a motion for summary judgment must show that this expert testimony will be available at trial. *Riedisser v. Nelson,* 111 Ariz. 542, 544, 534 P.2d 1052, 1054 (1975); *Morrell v. St. Luke's Medical Center,* 27 Ariz.App. 486, 487–88, 556 P.2d 334, 335–36 (1976); *Abernethy v. Smith,* 17 Ariz.App. 363, 369, 498 P.2d 175, 181 (1972).

■ Taking all inferences from the record in a light most favorable to the appellants, *Faris v. Doctors Hospital, Inc.,* 18 Ariz.App. 264, 501 P.2d 440 (1972), we believe that the evidence in the record showing the type of expert testimony which will be available at trial is sufficient to overcome a motion for summary judgment. First, the deposition testimony of Dr. Goldsmith establishes one standard of care. One of the plaintiffs' contentions is that Dr. Goldsmith was negligent in failing to use hyper-immune globulin (human-immune globulin) in the treat-

ment of Mrs. Pasley to prevent tetanus from occurring. In his deposition, Dr. Goldsmith admitted that he accepted as authority the guidelines prepared by the Committee on Trauma of the American College of Surgeons, entitled "Prophylaxis Against Tetanus and Wound Management." One of the procedures required by the guidelines is that human-immune globulin be given to patients with wounds which indicate an overwhelming possibility that tetanus will develop. At the very least, this testimony shows that the plaintiffs will be able to establish at trial that the standard of care for patients whose wounds indicate an overwhelming possibility that tetanus will develop requires administering human-immune globulin. Consequently, one question of fact to be resolved at trial is whether Mrs. Pasley's wounds indicated an overwhelming possibility that tetanus would develop.

■ In addition to Dr. Goldsmith's testimony, we also believe that the affidavit of Dr. Robles is sufficient to withstand a motion for summary judgment. Although Dr. Robles's initial affidavit failed to state that he was familiar with the standard of care practiced in Phoenix, it did state that he was familiar with the standard of care of physicians, regardless of their specialty, in the treatment of traumatic wounds. Even under the restrictive locality test, *see* *Kronke v. Danielson,* 108 Ariz. 400, 403, 499 P.2d 156, 159 (1972), this allegation is adequate to defeat the motion for summary judgment. The same or similar community test "should not exclude testimony of an expert witness where the standards to which he proposes to testify are minimum standards applicable wherever medicine is practiced." *Faulkner v. Pezeshki,* 44 Ohio App.2d 186, 192, 337 N.E.2d 158, 163 (1975). *See also Martin v. Bralliar,* 36 Colo.App. 254, 540 P.2d 1118, 1121 (1975). A reasonable inference to be drawn from the affidavit of Dr. Robles is that there is a minimum standard of care for the treatment of traumatic wounds. Whether such a minimum national standard of care exists is a question of fact to be resolved at trial. The

plaintiffs have shown that they have an expert who will testify to this minimum national standard. Thus, summary judgment was improper.

Since our decision in this case rests on our view of the deposition of Dr. Goldsmith and the affidavit of Dr. Robles, we have no need to consider whether the trial court erred in refusing to consider the amended affidavit of Dr. Robles.

The summary judgment is reversed and this matter is remanded for further proceedings consistent with this decision.

JACOBSON and NELSON, JJ., concur.