811 P.2d 340

**Edward McGUIRE, By and Through his next friend, David McGUIRE; David McGuire, individually, and Colleen McGuire, Plaintiffs–Appellants,**

**v.**

**Salvatore J. DeFRANCESCO; Thomas West Professional Association: Obstetrics & Gynecology, a corporation; and St. Joseph's Hospital and Medical Center, an Arizona corporation; Does I through XXX, inclusive, Defendants–Appellees.**

**No. 1 CA–CV 88–433.**

Court of Appeals of Arizona, Division 1, Department C.

Oct. 25, 1990.

Reconsideration Denied Dec. 27, 1990.

Review Denied June 4, 1991.

Charles M. Brewer, Ltd., Phoenix, for plaintiffs-appellants.

Snell & Wilmer by Barry D. Halpern, Laura W. Janzik and Eileen J. Moore, Phoenix, for defendants-appellees DeFrancesco and Thomas West Professional Ass'n.

Mitten, Goodwin & Raup by Roger C. Mitten, Phoenix, for defendant-appellee St. Joseph's Hosp. and Medical Center.

## OPINION

FIDEL, Presiding Judge.

■ One who sues a health care provider for malpractice in Arizona must prove that the defendant failed to exercise the degree of care that would be expected under similar circumstances of a reasonably prudent member of the same profession or class within this state. Ariz.Rev.Stat.Ann. § 12–563 (1976). May a plaintiff prove that a board-certified medical specialist violated this statewide standard by expert testimony that the physician's care fell below minimum standards required of his specialty in every state including Arizona? And may a plaintiff prove that a hospital and its staff violated this statewide standard by expert testimony that the hospital's care fell below minimum standards applicable to hospitals in every state including Arizona? These are the essential questions of this appeal. A secondary question is whether an expert must prove first-hand acquaintance with Arizona practice to qualify to testify that a nationwide minimum standard applies to defendants practicing within this state.

## HISTORY

Plaintiffs' child was born on September 20, 1980, in St. Joseph's Hospital and Medical Center in Phoenix, Arizona. The attending physician was Salvatore J. DeFrancesco, M.D., a board-certified specialist in obstetrics and gynecology. The hospital performed fetal heart monitoring during earlier stages of labor, but disconnected the monitor when the mother was moved to the delivery room. The child was delivered with the umbilical cord wrapped twice around his neck and has severe defects caused by lack of oxygen during delivery.

On November 3, 1986, plaintiffs filed a medical malpractice action against Dr. DeFrancesco and St. Joseph's, among others, alleging: (1) negligent failure to monitor fetal heart rate in the delivery room; (2) negligent failure to perform caesarean section; and (3) negligent performance of mid-forceps delivery.[1]

Dr. DeFrancesco and St. Joseph's eventually moved for summary judgment on the

---

1. Only the fetal heart monitoring claim is at issue on appeal. We therefore do not address plaintiffs' initial claims of negligent failure to perform a caesarean section and negligent performance of a mid-forceps delivery.

ground that plaintiffs had not identified an expert who would testify about the applicable standard of care. In response, plaintiffs submitted the affidavit of Dr. Maclyn Wade, a board-certified obstetrician and gynecologist associated with Cedars–Sinai Medical Center in Los Angeles, California. Dr. Wade has previously qualified in the Superior Court of Maricopa County as an expert on the standard of care of Arizona obstetrician-gynecologists. However, he has never lived or practiced medicine in Arizona and has no first-hand familiarity with Arizona hospital delivery practice in 1980. Dr. Wade testified at deposition that there is a minimal nationwide standard of care for obstetricians and hospitals concerning the delivery of babies, which applies in Arizona and every other state, and that defendants violated this standard by neglecting to continue fetal heart monitoring in the delivery room for plaintiffs' high risk (post-term) fetus:

Q. Based upon your affidavit, it appears that you believe that you were familiar with the standard of care in 1980 in obstetrics and gynecology in the State of Arizona. Is that your testimony, Doctor?

A. It sure is. Based upon the fact that the standard of care for the State of Arizona is the same as it is for California, as it is for New York, as it is throughout the rest of the United States for all hospitals that are under JCAH [Joint Committee on Accreditation of Hospitals] as well as all obstetricians, gynecologists who are members of the American College of Obstetricians and Gynecologists and follow their guidelines, as well as all diplomats of the American board. We all read the same literature.

Q. Doctor, you don't take the position, do you, sir, that the Joint Committee on Accreditation of Hospitals sets the standard of care in this country, do you?

A. They set a standard of care, minimal care for hospitals to follow, yes.

.        .        .        .        .

Q. Do you take the position that the American College guidelines set the standard of care for obstetricians in this country?

A. They set a minimal standard of care, yes.

Despite this testimony, the trial court entered summary judgment in favor of defendants. The court explained:

Considering the claim against the defendant doctor, the court finds that Dr. Wade bases his opinion of the standard of care required in fetal monitoring of a 42 week pregnant mother in the delivery room to be based on his assumptions of what board certified [obstetricians] SHOULD BE DOING nationwide rather than any facts regarding what THEY WERE DOING IN ARIZONA in 1980. This is insufficient foundation under the law for giving an opinion....

(Emphasis in original.) This appeal followed.

## STATEWIDE STANDARD OF CARE

■ In response to a motion for summary judgment, a medical malpractice plaintiff must show that expert testimony is available to establish that the provider's treatment fell below the applicable standard of care. *Pendleton v. Cilley*, 118 Ariz. 84, 86–87, 574 P.2d 1303, 1305–06 (1978). The first issue we address is whether Dr. DeFrancesco's care is measured by a statewide or a non-geographic obstetrical standard.

In *Kronke v. Danielson*, 108 Ariz. 400, 499 P.2d 156 (1972), the Arizona Supreme Court distinguished between specialists and general practitioners in deciding whether physicians should be held to a geographic or general standard of care. The court concluded that the treatment of general practitioners should continue to be evaluated by reference to the geographic standard of care in the same or similar community. 108 Ariz. at 403, 499 Ariz. at 159. Specialists, however, should be held, without geographic reference, to "the standard of care and treatment commonly practiced by physicians engaged in the same type of specialty." *Id.*

In 1976 the Arizona Legislature supplanted this distinction by adopting a state-

wide standard of care for all health care providers. Ariz.Rev.Stat.Ann. § 12–563 (1976) requires proof in any medical malpractice action that

> [t]he health care provider failed to exercise that degree of care, skill and learning expected of a reasonable prudent health care provider in the profession or class to which he belongs within the state acting in the same or similar circumstances....

*Id.* at 12–563(1).

■ This court has interpreted § 12–563 to hold specialists, like other health care providers, to a statewide standard of care. *Gaston v. Hunter*, 121 Ariz. 33, 53 n. 21, 588 P.2d 326, 346 n. 21 (App.1978); *see also* M. Udall & J. Livermore, *Law of Evidence* § 25, at 44 (1982). Plaintiffs point out, however, that our *Gaston* footnote to this effect was merely dictum. Plaintiffs urge us to now interpret § 12–563 more narrowly to provide a statewide standard for general practitioners only, leaving unaltered the general specialty standard of *Kronke*. We decline to do so. The statute makes no such distinction, referring to the inclusive category of "health care providers" as a whole.

Plaintiffs point out that in *Johnson v. University Hospital*, 148 Ariz. 37, 43, 712 P.2d 950, 956 (App.1985), we described the standard established by § 12–563 as "substantially the same as had been applied in Arizona prior to passage of the Health Care Act [Ariz.Rev.Stat.Ann. § 12–561 *et seq.* (1976) ], when actions were based upon common law negligence." This statement, when examined in the present context, is overbroad. A statewide standard for general practitioners may or may not correspond to the preexisting "same or similar community" standard; a statewide standard for specialists may or may not correspond to the preexisting non-geographic specialty standard. The standards may as a practical matter prove substantially the same, particularly for specialists whose certification procedures require adherence to certain minimal standards regardless of locale. This correspondence, however, must be proven. Thus, *Johnson* does not alter our conclusion that an Arizona plaintiff must establish "the degree of care, skill and learning expected of a reasonable prudent health care provider in [that specialty] *within the state.*" Ariz.Rev.Stat. Ann. § 12–563 (emphasis added).

## STATEWIDE APPLICATION OF A NATIONAL SPECIALTY STANDARD

■ Defendants argue, however, that § 12–563 precludes even the effort to prove, as a point of disputed fact, that the statewide minimal standard for a given incident of specialty or hospital practice arises from the requirements of bodies engaged in certification or accreditation on a national scale. Here we disagree. This court rejected a similar argument once before. In *Pollard v. Goldsmith*, 117 Ariz. 363, 572 P.2d 1201 (App.1977), we considered whether the plaintiff's expert could establish the "same or similar community standard of care" by reference to a minimal national standard. In holding that the expert's testimony was sufficient to overcome a motion for summary judgment, we stated:

> The same or similar community test "should not exclude testimony of an expert witness where the standards to which he proposes to testify are minimum standards applicable wherever medicine is practiced." ... A reasonable inference to be drawn from the affidavit of Dr. Robles is that there is a minimum standard of care for the treatment of traumatic wounds. *Whether such a minimum national standard of care exists is a question of fact to be resolved at trial.* The plaintiffs have shown that they have an expert who will testify to this minimum national standard. Thus, summary judgment was improper.

117 Ariz. at 365–66, 572 P.2d at 1203–04. (emphasis added; citations omitted).

Defendants point out correctly that the actionable events in *Pollard* occurred before the effective date of § 12–563. However, the statute does not diminish the applicability of *Pollard*'s reasoning to this case. In *Pollard*, as in this case, the plain-

tiffs faced a local frame of reference for determination of standard of care. In *Pollard*, the frame of reference was "same or similar community"; in this case, the frame of reference is statewide. In *Pollard*, the court held it a question of fact whether that local standard was established by an applicable minimal national standard. We repeat that holding in this case.

This holding does not, as defendants suggest, detract from the statutory requirement that a statewide standard must be proven. Defendants in this or other cases may challenge the assertion that a minimal national standard sets the local floor. Defendants in this or other cases may set out to prove that the supposed minimal national standard accommodates local or circumstantial variations and permits a less rigorous statewide standard applicable in the circumstances of the case at hand. Plaintiffs in this or other cases might prove that Arizona practice holds providers to a *more rigorous* standard than the minimal national standard that applies elsewhere. All such questions, as we recognized in *Pollard*, are questions of fact. We hold today only that the courts will not shut their doors to evidence, when probative evidence is offered, that a national minimal standard establishes the minimal "degree of care, skill and learning expected of a reasonable prudent health care provider in the profession or class to which he belongs within the state acting in the same or similar circumstances." Ariz.Rev.Stat.Ann. § 12–563.

## FOUNDATION

■ We next consider defendants' argument and the trial court's finding that Dr. Wade's testimony lacked foundation because he had no first-hand experience with the practice of medicine in Arizona. Again we disagree, and again we turn to *Pollard* for support. There defendants claimed that the plaintiffs' expert lacked foundation to establish the "same or similar community" standard because his affidavit did not specify that he was familiar with the standard of practice in Phoenix. This court rejected that argument. Plaintiffs' expert had asserted his familiarity with a mini-

mum standard of care applicable to the treatment of traumatic wounds wherever medicine is practiced, and we pronounced this testimony adequate to defeat summary judgment "[e]ven under the restrictive locality test." 117 Ariz. at 365, 572 P.2d at 1203.

We find analogous support for our position in *Taylor v. DiRico*, 124 Ariz. 513, 518, 606 P.2d 3, 8 (1980). There the issue was not whether an expert lacking first-hand experience could testify about the standard of care in a given location but rather whether such an expert could establish the standard of care in a specialty to which he did not belong. The Arizona Supreme Court concluded in that context that education, experience, and observation may adequately substitute for first-hand experience to establish an expert's knowledge of the applicable standard of care. We apply that principle in this case. The lack of first-hand experience may affect the weight to be given the expert's testimony, but does not altogether preclude its admissibility. *Smith v. John C. Lincoln Hospital*, 118 Ariz. 549, 551, 578 P.2d 630, 632 (App.1978) ("The weight and credibility of [the experts'] testimony and the extent of their claimed knowledge of nursing procedures in the Phoenix community went more to the weight of their testimony than to its admissibility.").

■ We recognize that the trial court has broad discretion in determining an expert's competency and that its determination should be reversed only upon clear abuse of discretion or error of law. *Smith v. John C. Lincoln Hospital*, 118 Ariz. at 551, 578 P.2d at 632. In this case, in our view, the trial court committed an error of law by accepting the argument that an expert must have direct first-hand knowledge of obstetrical delivery practice in Arizona. Dr. Wade is qualified by education, experience, and observation to testify that in 1980 a minimal standard was applicable to obstetrical delivery practice in every state and that the applicable standard in Arizona could be no lower. Defendants are free to dispute this opinion, but the plaintiffs have adequately established Dr.

Wade's foundation to place the opinion before the jury.

## CONCLUSION

We reverse summary judgment for defendants on the issue of fetal monitoring and remand for proceedings consistent with this opinion.

GERBER and EUBANK, JJ., concur.